Wilson Jacobson, P.C.
The Inns of Court Building
99 Court Street
Suite 2
White Plains, New York 10601-4264
(914) 997-0825
FAX (914) 997-0830

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**SPACE AGE ALARMS, INC.,**

       Plaintiff

      -against-

**THE BOARD OF EDUCATION OF THE WHITE
PLAINS CITY SCHOOL DISTRICT , MICHAEL
J. LYNCH AND ALARM SPECIALISTS, INC.**

      Defendants.

07 CIV. 7606

BRIEANT

**File No.**

**VERIFIED    COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

### PRELIMINARY STATEMENT

This is a civil action, brought under 42 U.S.C. § 1981, and  42 U.S.C §1983, 42 U.S.C

§1331 and 42 U.S.C §§ 1343(a)(1), (a)(3) and (a)(4) and under 28 U.S.C. § § 2201 and 2202

seeking damages, injunctive and declaratory relief against the Defendants Board of Education of

the White Plains City School District and Michael J. Lynch for committing intentional acts

against the Plaintiff because of the race of its owners and for committing intentional acts against

the Plaintiff under color of state law, which deprived the Plaintiff of Federal Civil Rights,

including those rights to freedom of speech and to petition the government secured by the First

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Amendment and the right to equal protection and to procedural and substantive due process secured by the Fourteenth Amendment to the United States Constitution.

Plaintiff also seeks damages and injunctive relief against the Defendant Alarm Specialists, Inc. under state law and to the extent that it has assisted or participated with the Defendant Board of Education to deprive Plaintiff of its federally guaranteed rights, appropriate relief under federal law.

Plaintiff also invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims arising from the same facts and circumstances as the claims arising under federal law, and form part of a single case or controversy to redress the injuries Plaintiff has suffered, continues to suffer and will suffer under Article 1, § 9 of the New York Constitution to remedy Plaintiff's right to redress its grievances; under Article 1, Sections 1 and 11 of the New York State Constitution and New York Executive Law § 296[13] to remedy violations of Plaintiff's rights to equal protection; under Education Law 2513 to vindicate public policy, and under New York common law for breach of contract, and tortious interference with contracts or business relationships.

## JURISDICTION AND VENUE

1.    The Court's jurisdiction is invoked pursuant to the provisions of 28 U.S.C. §§ 1331, 42 U.S.C §§ 1343(a) (1), (a) (3) and (a) (4), and 42 U.S.C § 1367 (a), providing jurisdiction for a federal question, for protection of civil rights, and for supplemental jurisdiction, respectively.

2.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c), as the Defendant  Board of Education of the White Plains City School District resides in the Southern District of New York and the claims arose in this judicial district.

## PARTIES

3.      Plaintiff Space Age Alarms, Inc. ("Space Age") is a corporation duly organized and existing under the laws of the State of New York. It was the winning bidder.

4.      Defendant Board of Education of the White Plains City School District (the "Board") is a body corporate under the laws of the State of New York. The Board consists of seven elected members. It has the overall responsibility for management and control of the properties that the Board uses in the school district.

5.      Defendant Michael J. Lynch (Mr. Lynch") is the Director of School Facilities and Operations for the City School District of the City of White Plains, New York.

6.      Defendant Alarm Specialists, Inc., ("Alarm Specialists") is a corporation organized and exists under the laws of the State of New York. It was the losing bidder.

## BACKGROUND FACTS

7.      Pursuant to the advertisement for bids dated 2:00 P.M. FRIDAY, May 18, 2007, Space Age submitted a bid on Bid #2006-15 and  Bid #2007-16, to provide monitoring & maintenance of fire alarm systems and security alarm systems respectively.

8.      On or about June 4, 2007, Space Age wrote a letter to Mr. Michael J. Lynch, Director School Facilities and Operations for the Board ("Mr. Lynch") saying:

> During our walk-thru at the Church Street and George Washington's Schools you indicated that existing Burglary Alarm Panel (Ademco/Honeywell) Access Control Devices and Fire Alarm Panel/Communicators Ademco/Honeywell and Silent Knight) including all burglary and fire alarm component devices is and remains the property of the school district. As for the newly installed keypad at some schools by the current security company, I am somewhat confused, unless the old keypad belonging to the district was in need of replacement and was authorize[d] being replaced by the district, then it seems this matter can be resolved through direct precise communication.

In any event, we will need **access codes** for each burglar, fire, access control system with telephone numbers, in order that we input our monitoring data. The existing systems operation program and user code should remain."
(Emphasis added)

9.    On or about June 6, 2007 Lynch responded to Space Age that:

Your fax letter, dated June 4, 2007, would seem to indicate you seem to believe there is some verbal understanding, separate from the bid documents regarding the required performance of Space Age Alarms. Please be advised of the following:

The bid documents clearly state in the monitoring and maintenance of security alarm systems and fire alarm systems, the bidder shall provide new keypad and communicator devices including the radio backup.

10.    Contrary to Mr. Lynch's letter, this statement does not appear in the Bid 2007-15 covering the fire alarm systems.

11.    Mr. Lynch continues in his June 6, 2007 letter:

I am sure you know from your required site visits, some schools have multiple independent security systems, some schools have integrated access systems and some have independent access systems. Some schools have Edwards fire panels, others have Honeywell fire panels and our high school has a Siemen's fire panel. In all cases, you are required to maintain the hardware and software for all these systems, including our emergency telephones and elevators and freezer alarms. The security contract is inclusive of all programming changes, including adding, modifying or deleting *user codes* and key fobs. The bid documents clearly specify, that the bidder must supply all labor, materials and parts to monitor and maintain these systems, no exceptions other than those listed. I have no agreement, written or verbal with any of our current vendors to require hardware or software support for other vendors.

I believe the White Plains *Building Department* requires permits for the installation and replacement of fire communication equipment, if so, please obtain them. Can you please forward to me *certification* that your technicians are factory authorized for maintaining these different fire control panels?"
(Emphasis added)

12.    Mr. Lynch's response did not address Space Age's need for the **access codes.**

13.    Mr. Lynch referred to the Building Department and not the Fire Department which is the appropriate agency.

14.    Mr. Lynch also seeks to impose a certification requirement on Space Age which is not contained in the bid documents. Nor is there any reference in the contract documents that require Space Age to provide Mr. Lynch with "...*certification* that your technicians are factory authorized for maintaining these different fire control panels" (Emphasis Added)

15.    On or about June 18, 2007 Lynch notified Space Age that the Board had approved a contract to Space Age pursuant to bid number 2006 [sic] -15: MONITORING AND MAINTENANCE OF FIRE ALARM SYSTEMS at its June 11, 2007 board meeting.

16.    Also on or about June 18, 2007 Lynch notified Space Age that the Board had approved a contract to Space Age pursuant to bid number 2007-16: MONITOR AND MAINTENANCE OF SECURITY ALARM SYSTEMS at its June 11, 2007 board meeting.

17.    Paragraph 11 of the General conditions of each Contract provide that all work to be performed under the contract will be done under the direction, supervision and inspection of the Director of Facilities & Operations or his designees, i.e. Mr. Lynch.

18.    On or about June 20, 2007 Space Age responded to Mr. Lynch saying, among other things, the following:

> As stated previously, we will need **access codes** to those systems belonging to the school district in order for us to input our monitoring

data. Thereafter all necessary programming changes such as adding or deleting user codes and key jobs [sic] would be no problem. As a security company we are New York state license to install, service or maintain security and fire alarm systems."
We are also one of the very few in Westchester County, UL certified installation security company that maintain trained personnel.
As a New York State license UL certified company federal, state and local code compliances must be followed at all times."(Emphasis added)

19.    On or about July 7, 2007 Space Age wrote to Mr. Lynch again saying that

it would like to input its monitoring data into the existing burglary and fire alarm school

district account.

20.    In the July 7, 2007 letter Space Age Alarms stated:

Please provide us the following information for each site:
1.    Premise phone numbers.
2.    Premise code or password.
3.    Contract call list order with name and telephone and flash and/or cell phone numbers.
4.    Any special instructions or requests you may have."

21.    On or about July 12, 2007 Space Age Alarms wrote Mr. Lynch again

saying that it had not received the information that it requested in its letter dated July 7,

2007.

22.    Space Age's July 12, 2007 letter stated further:

As you may recall in my letter dated June 4, 2007 in order for this transition process to be implemented we would need necessary access to reprogram our data in all the district security systems.
On Wednesday, July 7, 2007 around 8:30 to 9:00 a.m. I call alarm specialists on behalf of the school district regarding this issue. In speaking to Stephanie and in sharing my purpose of calling she did say that most recently that Gary one of the company's principals had requested that she program lockout access to all of the district security systems."

23.    On or about July 13, 2007 Phyllis Paul of the White Plains City School District faxed to Space Age a document which said: "As requested. Attached is a copy of the security codes."

24.    In fact this was not a copy of the security codes, they were **user codes.**

25.    On or about July 19, 2007 Mr. Lynch wrote to Space Age Alarm with respect to the fire alarm and security alarm contracts:

> Dear Mr. Johnson:
> In response to the fact that you have not switched over the communicators to your company, we find you in default of the monitoring contract for the burglar and fire alarm systems. We are recommending at the August 6 school board meeting that the contract with your firm be terminated. We also wish to inform you that due to a bid error on our part we will be re-bidding the *maintenance* portion of the burglar and alarm systems.

26.    Without the **access codes** Space Age cannot communicate with the installed systems.

27.    Additionally, Mr. Lynch does not spell out what the error is.

28.    In addition, by limiting the new bid to *maintenance* Mr. Lynch suggests that the district is going to continue to use the hardware that is in place. A reasonable inference would be that the Board intends to continue to use the old contractor, Alarm Systems.

29.    On or about July 19, 2007 Space Age wrote to Mr. Gary Davis, Vice President of Alarm Specialists, with respect to the White Plains School District security systems. Alarm Specialists had been the prior fire alarm and security monitoring and maintenance contractor for 11 years. Plaintiff displaced Alarm Specialists.

30.    Space Age wrote:

Dear Mr. Davis:
Since we are experiencing difficult connecting via telephone, on behalf of the White Plains School District as its newly approved security company, I am requesting that you DISABLE the most recently programmed local access lockout from all of the district security (burglar and fire alarm communicator) systems.  The access lockout have been verified by our attempt to access programs and by Stephanie of your office during telephone call to you on July 11, 2007.
Thanks so very much in addressing this issue and would you kindly advise the district or us in order that we may begin the transitional process of programming our monitoring data within the various systems.

31.    On or about July 24, 2007 Space Age wrote a letter to the individual

Board members transmitting Mr. Lynch's July 19, 2007 letter and also letter dated July

24, 2007 which was a reply from Alarm Specialists dated July 24, which was in response

to Space Age's letter to them dated July 19, 2007.

32.    In the July 24, 2007 letter Space Age stated to the Board members:

In order that we implement the service we are contracted to perform its required that we have access capability to all of the district's security systems.  Local access lockout must be disable.


Should the district encounter problem in having the local lockout disabled by current security company, then it may very well be necessary to swap out the current system's control panels/keypads with new compatible ones at an additional cost to the district.  In any event we will assist and do whatever's necessary in maintaining the district's security service.

33.    The letter that Space Age referred to is a July 24, 2007 letter from Alarm

Specialists and it read as follows:

The security control panels, fire communicator panels, and radio communicators along with a select number of control pads were supplied, installed and programmed at our expense.  Therefore as indicated in the

bid documents, this equipment, including the software for these systems are the property of Alarm Specialists, Inc.

The White Plains Fire Department is currently aware of the change in fire communication equipment and is now waiting for the appropriate paperwork 'regarding [?]' your equipment. I have instructed my office to invoice the district for the month of July and August (required notice cancellation has expired). Please let me know if there is any other information that you require.

34.    Mr. Davis did not point to any specific provision in the bid documents which gave ownership rights in the foregoing equipment including the software for those systems as being the property of Alarm Specialists.

35.    In direct contradiction to what Alarms specialists wrote, Bid #2007-15 says on page 24:

NOTE: No modifications to the system may be made by the successful bidder without prior approval of the director of facilities and Operations. Installed key pads/communicators are the property of the School District.

36.    The Board and its counsel have thus far refused to answer the question of who owns what, even though this question has been put to them in writing.

37.    Space Age has no documents to show that alarms Specialists own any of this property.

38.    The Board has also refused to assist Space Age in securing the access codes and making this transition which is customary in contracts of this type.

39.    On July 25, 2007 Space Age wrote a letter to Mr. Davis [at Alarm Specialists] which pointed out that bid number 2007-16 stated:

Bid number 2007-16 Monitoring and Maintenance of Security Alarm Systems the beginning paragraph page number 25.

1.      It is the intention of this specification to include all labor, material and equipment to provide a one-year maintenance contract for the security alarm systems located in various school district sites.

2.      Last paragraph, page number 26.  Note no modifications to the system may be made by the successful bidder without prior approval of the Director of Facilities and Operations.  *Installed keypad/communicators are the property school district.

40.    The letter concludes with a query of Mr. Davis asking if Defendant Lynch was saying that before Alarm Specialists began servicing the district there were no existing security panels or keypads.

41.    Space Age copied the board members and Mr. Lynch on the July 25, 2007 letter to Mr. Davis.

42.    Space Age never received a response to this or to any of its other letters from the Board.

43.    On July 30, 2007 Mr. Davis wrote a letter to Space Age saying:

Dear Mr. Johnson,
Please let me clarify, my letter was not a comparison of previous contracts to this one.  The bid documents have stated that the vendor needed to provide the communicator devices, including radio backup.  Either way I am not going to debate this issue any further.
Best regards, Gary Davis, Vice President.

44.    On July 31, 2007 Space Age wrote a letter to Lynch, which stated, in part:

Mr. Lynch,

You as Director of School Facilities and Operations have done very little in assisting us through the transition process of removing access lockout from the various security alarm systems of bid number 2007-16.
Until you or the members advise us that the local lockout have been disabled or advise us to swap out the current security alarm system/keypads per my letter dated July 24, 2007, we cannot provide any service nor will we begin the installation of new radio backup systems or digital communicators for monitoring the existing fire alarm systems per bid number 2007-15.

45.     On August 6, 2007 the Board had placed on its agenda Item VI. – 3.
"3.     Recommended approval to terminate the bid award to Space Age Alarms." A
copy of the Agenda is annexed hereto as Exhibit "1".

46.     On August 6, 2007 Space Age's counsel faxed and sent a letter by email to
Michele Schoenfeld, the Clerk of the Board, requesting an opportunity to speak in
opposition to this action.  He also requested a copy of the documents that the Board's
presenter would use to support his recommendation that the bid award be terminated.  A
copy of Wilson letter to Schoenfeld dated August 6, 2007 is annexed hereto as Exhibit
"2".

47.     The Clerk did not respond.

48.     Plaintiff's counsel appeared at the August Board meeting, and before the
meeting, gave the Clerk a copy of a letter addressed to the Board members dated August
6, 2007 with enclosures to give to each of the Board members. A copy of Wilson letter to
the Board members dated August 6, 2007 (without exhibits) is annexed hereto as Exhibit
"3".

49.     Before the Board meeting Mr. Fred Seiler, who upon information and
belief, is the Assistant Superintendent for Business for the District, told Plaintiff's
counsel that he wanted to work things out but that he had not been able to contact the
District's counsel.

50.     At that time, Mr. Seiler told Plaintiff's counsel that the item concerning
the termination of the Space Age bids would be tabled.

51.     In his statement before the Board Plaintiff's counsel told the members that
he understood that the matter would be tabled, again requested of the Board the

11

documents upon which they were going to make a decision, asked to be informed of the adjourned date for the consideration of this item, and asked them to read and review the documents that he had included in the package for each of them that he had delivered to the Clerk.

52.    After his appearance, Board member Conner told Plaintiff's counsel that the matter had been tabled.  Plaintiff's counsel later received a letter form Defendant Board's counsel that the matter had been tabled.

53.    Within 2 days after that meeting, to wit, on August 8 and August 9th, the Journal News, which covers White Plains, published legal notices re-advertising a "Notice to Contractors" requesting bids for the services to provide monitoring & maintenance of fire alarm systems and security alarm systems for the school district. A copy of each of these notices is annexed hereto as Exhibit "4".

54.    The notices provide that the bids would "be received by the Board of Education of the City of White Plains, New York at the office of the Board of Education, 5 Homeside Lane, White Plains, New York until 2:00 PM, Friday, August 24, 2007 at which time and place the proposals will be publicly opened and read."

55.    These notices were placed by Mr. Lynch.

56.    Upon information and belief, the notices, these bids, contracts and specifications were prepared and placed pursuant to Education Law § 2513.

57.    The Board members knew or should have known or had notice of these publications.

58.    On August 10, 2007, Plaintiff's counsel again wrote a letter to Ms. Schoenfeld, the Clerk of the Board, asking for an explanation of the reason for the notices

in light of the fact that the Board had tabled its action on whether or not Space Age's contracts for the same services should be terminated. A copy of the August 10, 2007 letter from Wilson to Schoenfeld is annexed hereto as Exhibit "5".

59. Plaintiff's counsel received no response.

60. On August 21, 2007 Mr. Lynch faxed an Addendum to Space Age Alarms to the new bids. Defendant Lynch had not provided Space Age with the documents that the addenda were to replace. A copy of these Addenda is annexed hereto as "6".

61. Space Age concluded that Mr. Lynch was the policymaker for the district on this issue as he was ignoring the Board.

62. African- Americans own the majority, if not all, of the issued and outstanding stock of Space Age.

63. Upon information and belief, Caucasians own the majority, if not all, of the issued and outstanding stock of Alarm Specialists.

64. Plaintiff has no adequate remedy under state law.

## COUNT I

(Violation of Plaintiff's Due Process Rights Under the 14th Amendment to the United States Constitution: 42 U.S.C. §1983)
(Against the Board and Mr. Lynch)

65. Plaintiff realleges each of the allegations set forth in paragraphs 1 through 64 above as though specifically restated here, and for a count against the Defendant Board and Defendant Lynch, alleges that:

66. Mr. Lynch has terminated Space Age's contracts with the apparent acquiescence adoption and sanction of the Board.

13

67. Under the circumstances set forth above, Mr. Lynch's acts or edicts fairly represent the official policy of the Board.

68. Mr. Lynch is the Board's final policy maker with respect to this termination.

69. Mr. Lynch's refusal to supply Space Age with the access codes and additional information that it needs in order to perform the contract deprives it of the opportunity to perform the contract.

70. Mr. Lynch's conduct and the Board's acquiescence, adoption and sanction of Mr. Lynch's practices deprive Space Age of valuable contract property rights without substantive due process of law.

71. The refusal of the Board to provide Space Age with the opportunity to confront Mr. Lynch in an adversarial hearing before the Board deprives Space Age of procedural due process of law.

72. The refusal of the Board to provide Space Age with the specific documents and testimony that the Board intended to rely upon to consider the recommendation to terminate these contracts deprives Space Age of procedural due process of law.

73. The refusal of the Board to provide Space Age with the opportunity of a fair hearing to persuade the Board that it did not breach the contracts deprives Space Age of procedural due process of law.

74. Mr. Lynch and the Board deprived the Plaintiff of its due process rights while acting under color of state law.

## COUNT II

(Violation of Plaintiff's First Amendment Rights Under the First Amendment to the United
States Constitution: 42 U.S.C. §1983)
(Against the Board and Mr. Lynch)

75.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 74
above as though specifically restated here, and for a count against the Defendant Board and
Defendant Lynch, alleges that:

76.    Plaintiff left the August 6, 2007 meeting thinking that it would receive a fair
opportunity for a hearing at an adjourned meeting.

77.    The failure of the Board to stop Defendant Lynch from publishing the notices a
mere 2 days after Plaintiff's counsel appeared before the Board to redress Plaintiff's grievances
was in retaliation for that appearance.

78.    Defendants Board and Lynch's decision to publish these notices after the board
had told Plaintiff's counsel, in the presence of Plaintiff's Chief executive Officer, who was in
the audience at the August 6, 2007 meeting was designed to (1) single out Plaintiff for selective,
injurious treatment in retaliation for its exercise of its First Amendment rights, or (2) with a
malicious or bad faith intent to injure Plaintiff.

79.    Mr. Lynch and the Board deprived the Plaintiff of its First Amendment right to
petition the government for the redress of its grievances while acting under color of state law.

## COUNT III

(Violation of Plaintiff's Under 42 U.S.C. §1981)
(Against the Board and Mr. Lynch)

80.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 79

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

42 U.S.C. §1981 provides:

§ 1981.  Equal rights under the law

(a) Statement of equal rights. All persons within the jurisdiction of the United States
shall have the same right in every State and Territory to make and enforce contracts,
… as is enjoyed by white citizens, and shall be subject to like punishment, pains,
penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term
"make and enforce contracts" includes the making, performance, modification, and
termination of contracts, and the enjoyment of all benefits, privileges, terms, and
conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected
against impairment by nongovernmental discrimination and impairment under color
of State law.

81.    Defendant Board and Defendant Lynch intentionally did not give Space Age the

same rights that it gave Alarm Specialists in making and enforcing contracts because Space Age

is owned by black people and Alarms Specialists is owned by white people.

82.    The conduct of Defendant Board and Defendant Lynch violated Plaintiff's rights

under 42 U.S.C. §1981.

## COUNT IV

(Violation of Plaintiff's Rights Under the Article 1, Section 9 of the New York State Constitution (Against the Board and Mr. Lynch)

83.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 82

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

84.    The forgoing conduct of Defendant Board and Defendant Lynch violate

Plaintiff's rights to petition the government under New York Constitution , Article 1, §9.

## COUNT V

(Violation of Plaintiff's Rights Under the Article 1, Sections 1 and 11 of the New York State Constitution and New York Executive Law § 296[13] (Against the Board and Mr. Lynch)

85.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 82

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

86.    Article 1, Section 1 of the New York State Constitution provides:

§ 1. [Rights, privileges and franchise secured]

No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land ...

Article 1, Section 11 of the New York State constitution provides:

§ 11. [Equal protection of laws; discrimination in civil rights prohibited]
No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

17

87.    The forgoing conduct of Defendant Board and Defendant Lynch violate

Plaintiff's rights to equal protection under New York Constitution, Article 1, Sections 1 and 11

and New York Executive Law § 296[13].

## COUNT VI

(Violation of Plaintiff's Rights Under New York State Education Law § 2513
(Against the Board and Mr. Lynch)

88.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 87

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

89.    Education Law § 2513 provides :

The board of education shall let all contracts for public work and all purchase
contracts to the lowest responsible bidder after advertisement for bids where so
required by section one hundred three of the general municipal law.

90.    The preparation of specifications, advertising of bids and awarding contracts for

a public project pursuant to Education Law § 2513 is a matter of acknowledged public interest.

91.    Where Plaintiff's contract rights have been violated as set forth above, then

pursuant to the public policy that underlies this section, contracts let in contravention of the

policy must be annulled.

## COUNT VII

(Breach of Contract)
(Against the Board and Mr. Lynch)

92.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 91

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

93.     Plaintiff was awarded the fire alarm and security alarms systems contracts by the Board.

94.     The person who was responsible for the administration of the contracts on the Board's behalf was Defendant Lynch.

95.     The Defendants Board and Lynch did nothing to assist Plaintiff in securing the access codes from the Board or its prior contractor Alarm Specialists.

96.     The Defendant Board and the Defendant Lynch knew that Plaintiff could not perform its contracts on behalf of the Board unless it received these access codes.

97.     Having prevented the performance of the contracts, Defendant Lynch then advised the Plaintiff that its contracts were terminated.

98.     As a result of this termination Plaintiff has suffered pecuniary and reputational injury.

## COUNT VIII

(Tortious Interference With Contract Relations)
(Against Alarm Specialists)

99.     Plaintiff realleges each of the allegations set forth in paragraphs 1 through 45 above as though specifically restated here, and for a count against the Defendant Board and Defendant Lynch, alleges that:

100.    Alarm Specialists intentionally and improperly interfered with the Plaintiff's performance of the contracts by asserting ownership interests in the Board's fire and security alarms systems.

101.    Alarm Specialists intentionally and improperly interfered with the Plaintiff's performance of the contracts by withholding the access code information from the Plaintiff which prevented the Plaintiff from accessing the systems so that it could perform its contracts.

102.    By withholding the access codes Alarm Specialist did not act in conformity with the usages and customs of the trade.

103.    As a result of this interference Defendant Lynch terminated the Plaintiff's contracts.

104.    As a further result of this interference and Alarm Specialists withholding the access codes, the Defendant Lynch asserted a claim against the plaintiff for $3,471.80 for food that spoiled as a result of a freezer outage when Plaintiff had no control over the alarms systems.

105.    As a result of Alarm Specialists interference, Plaintiff has suffered pecuniary and reputational injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays this Honorable Court:

1)  declare that the Defendants Board and Lynch have violated Plaintiff's rights to procedural due process under the Federal and New York State Constitutions as set forth above ;

2)  declare that the Defendants Board and Lynch have violated Plaintiff's rights to substantive due process  under the Federal and New York State Constitutions as set forth above;

3)   declare that the Defendants Board and Lynch have retaliated against the Plaintiff and violated its rights to petition the government for the redress of its grievances under the Federal and New York State Constitutions as set forth above;

20

4) declare that the Defendants Board and Lynch have violated Plaintiff's rights to the equal protection of the laws because of the race of its owners under the 42 U.S.C. Section 1981 and under the Federal and New York State Constitutions as set forth above;

5) declare that the Defendants Board and Lynch have violated Plaintiff's rights to the equal protection of the laws because of the race of its owners under the New York State Executive Law § 296[13].

6) order injunctive relief by annulling any bid awards that the Defendant Board and Defendant Lynch might have granted on August 24, 2007 under Bid #2007-23 and Bid #2007-24 pursuant to the August 8 and August 9, 2007 legal notices;

7) order injunctive relief by enjoining and restraining the Defendant Board, Defendant Lynch or anyone acting on their behalf from performing any work under any contracts that it might have let under Bid #2007-23 and Bid #2007-24;

8) order injunctive relief against Alarm Specialists ordering it to turn over the access codes and related information that Space Age Alarms needs to complete its contract the termination of which the Board never approved;

9) award compensatory damages to Plaintiff, against the respective Defendants, and each of them, under each Count above in an amount commensurate with losses suffered

10) award attorney's fees and costs of this action; and

11) grant all other just and proper relief.

Claude Johnson

Dated: White Plains, NY
       August 26, 2007

STATE OF NEW YORK
COUNTY OF WESTCHESTER  ss.

CLAUDE JOHNSON, being duly sworn, deposes and says he is the President of Space Age
Alarms, Inc.  the above named Plaintiff, which is a corporation created under, and by virtue of
the laws of the State of New York; he has read the foregoing complaint and the same is true to
the knowledge of the deponent except as to the matters therein stated to be alleged on
information and belief, and as to those matters he believes it to be true.


_____
CLAUDE JOHNSON


Sworn to before me this 26th day
Of August 2007

_____
NOTARY PUBLIC


WILSON JACOBSON, P.C
By:_____
Leroy Wilson, Jr., President
Attorney for Plaintiff
President
(Bar Code No. LWJr 2473)
The Inns of Court Building
Suite 2
White Plains, NY 10601-4264
(914) 997-0825
Fax (914) 994-0830

(Of Counsel, Roni L. Jacobson, Esq.,
Bar Code No. RJ 9691)

22