UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPACE AGE ALARMS, INC.,

Plaintiff,

– against –

THE BOARD OF EDUCATION OF THE WHITE
PLAINS CITY SCHOOL DISTRICT, MICHAEL J.
LYNCH AND ALARM SPECIALISTS, INC.

Defendants.

---

Case No.:

07-CV-7606 (CLB)(MDF)

<br>

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION TO DISMISS BY DEFENDANTS
## THE BOARD OF EDUCATION OF THE WHITE PLAINS
## CITY SCHOOL DISTRICT AND MICHAEL J. LYNCH

<br>

INGERMAN SMITH, LLP
Attorneys for Defendants
THE BOARD OF EDUCATION
OF THE WHITE PLAINS
CITY SCHOOL DISTRICT and
MICHAEL J. LYNCH
150 Motor Parkway, Suite 400
Hauppauge, New York 11788
(631) 261-8834

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS .................................................................... 2

ARGUMENT ...................................................................................... 6

I.    PLAINTIFF HAS NOT COMPLIED WITH THE
STATUTORY REQUIREMENTS FOR COMMENCING AN
ACTION AGAINST A SCHOOL DISTRICT OR ITS
EMPLOYEES ..................................................................................... 7

II.  PLAINTIFF HAS NOT ALLEGED ANY FACTS WHICH
SHOW RACE PLAYED ANY PART IN THE DECISION TO
TERMINATE THE ALARM CONTRACTS .......................................... 9

       A.    Plaintiff's Naked Allegations Fail to Allege
Even the Slightest Hint of Discriminatory
Conduct ................................................................... 11

       B.    Plaintiff Fails to State a Claim Under
N.Y. Human Rights Law Section 296(13) ................... 14

III.  PLAINTIFF FAILS TO STATE A CLAIM FOR A 42
U.S.C. §1983 VIOLATION ................................................................ 15

       A.    Plaintiff's Procedural Due Process Claim
Cannot Be Maintained Because Plaintiff
Was Not Deprived of a Constitutionally-
Protected Property Interest ...................................... 15

       i.    Plaintiff Was Not Deprived of a
Constitutionally Protected Property Interest ............. 16

# **TABLE OF CONTENTS**

ii.    Even if a Property Interest is Found, Plaintiff was Given Due Process Before the Contracts were Terminated and had Adequate Remedies Available ................................................. 18

B.    Plaintiff has not Pled a Claim for a Substantive Due Process Violation .......................................... 19

C.    Plaintiff Failed to Plead Facts Sufficient to State a Claim that the School District and/or Lynch Hindered its Right to Petition the Board of Education.................................................. 21

IV. PLAINTIFF FAILS TO ALLEGE A STATE LAW EQUAL PROTECTION CLAIM .......................................................... 23

V. PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION FOR DAMAGES TO ENFORCE N.Y. EDUCATION LAW §2513 ................................................................................................. 24

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Cases Cited:

Alie v. Nynex Corp., 158 F.R.D. 239 (E.D.N.Y. 1994) .................................................. 12

Barr v. Abrams, 810 F.2d 358 (2d Cir. 1987) ............................................................. 11

Bd. of Regents of State Colleges v. Roth,
408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) .................................................. 15-16

Berheim v. Litt, 93 F.3d 318 (2d Cir. 1996) .................................................. 7

Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.,
127 F. Supp.2d 452 (S.D.N.Y. 2001) .......................................................... 10

Bowers v. Hardwick, 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed.2d 140 (1986) .............. 19-20

Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988) .......................................... 23

Cooper v. Parsky, 140 F.3d 433 (2d Cir. 1998) ................................................... 6

Courtemanche v. Enlarged School District of the City of Middletown,
686 F. Supp. 1025 (S.D.N.Y. 1988) .......................................................... 8-9

Crowley v. Courville, 76 F.3d 47 (2d Cir. 1996) ........................................................ 23

Dorsey v. Stuyvesant Town Corp.,
299 N.Y. 512, 87 N.E.2d 541, 14 A.L.R.2d 133 (1949) .................................................. 23

Eastway Constr., Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985) .................... 17

Empire Transit Mix, Inc. v. Giuliani, 37 F. Supp.2d 331 (S.D.N.Y. 1999) .......... 17, 19, 20

Escalera v. N.Y. City Housing Auth., 425 F.2d 853 (2d Cir. 1970) .............................. 20

Grady v. Affiliated Cent., Inc., 130 F.3d 553 (2d Cir. 1997) .................................... 13-14

# TABLE OF AUTHORITIES

Hellenic Am. Neighborhood Action Comm. v. City of New York,
101 F.3d 877 (2d Cir. 1996) ..................................................... 19

Kittay v. Giuliani, 112 F. Supp.2d 342 (S.D.N.Y. 2000) ................................. 22

Leeds v. Meltz, 85 F.3d 51 (2d Cir. 1996) ................................... 7

Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL-CIO v.
Town Bd. of Huntington, 31 F.3d 1191 (2d Cir. 1994) ................................. 20

Mehtani v. N.Y. Life Insurance Co.,
145 A.D.2d 90, 537 N.Y.S.2d 800 (1st Dep't. 1989),
app. dismissed, 74 N.Y.2d 835 (1989), app. denied, 85 N.Y.2d 806 (1995) ............... 14-15

Minn. State Bd. for Community Colleges v. Knight,
465 U.S. 271, 104 S. Ct. 1058, 1066, 79 L. Ed.2d 299 (1984) ........................... 22

Narumanchi v. Board of Trustees, 850 F.2d 70 (2d Cir. 1988) ..................................... 16

Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005) ........................................ 23

Odom v. Columbia Univ., 906 F. Supp. 188 (S.D.N.Y. 1995) ........................................ 13

Parochial Bus Systems v. Bd. of Educ., 60 N.Y.2d 539, 470 N.Y.S.2d 564 (1983) ............. 8

Pickering v. Flacke,
115 Misc.2d 264, 453 N.Y.S.2d 1016 (N.Y. Sup., Erie Cnty. 1982) ................................. 22

Public Improvements, Inc. v. Board of Educ. of City of New York,
56 N.Y.2d 850, 438 N.E.2d 876, 453 N.Y.S.2d 170 (1982) ................................. 8

Reyes v. Erickson, 238 F. Supp. 2d 632 (S.D.N.Y. 2003) ................................. 11

Scott v. Massachusetts Mut. Life Ins. Co.,
86 N.Y.2d 429, 657 N.E.2d 769, 633 N.Y.S.2d 754 (1995) ................................. 14

S & D Maint. Co., Inc. v. Goldin, 844 F.2d 962 (2d Cir. 1988) ........................... 16-17, 19

iv

# TABLE OF AUTHORITIES

<u>Stride Contracting Corp. v. Board of Contract and Supply of City of Yonkers</u>,
181 A.D.2d 876, 581 N.Y.S.2d 446. (2d Dep't. 1992) ..................................... 25

<u>Terminate Control Corp. v. Horowitz</u>,  28 F.3d 1335 (2d Cir. 1994) ............................ 17

<u>White & Prentis, Inc. v. Southwest Sewer Dist.</u>,
103 A.D.2d 802, 477 N.Y.S.2d 681 (2d Dep't. 1984) ..................................... 25

<u>World Religious Relief v. Sirius Satellite Radio, Inc.</u>,
No. 05-CV-8257 2007 WL 2261549 (S.D.N.Y. Aug. 7, 2007) ......................................... 12

<u>Yusuf v. Vassar Coll.</u>, 35 F.3d 709 (2d Cir. 1994) ........................................... 11, 12, 13

<u>Zinermon v. Burch</u>, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ...................... 18

Statutory Cites:

F.R.C.P. 12(b)(1) and (6) ..................................................................... passim

N.Y. Educ. Law §3813......................................................................... 7-8

N.Y. Educ. Law §2513) ........................................................................ 24

42 U.S.C. §1983 ....................................................................... 10 and passim

42 U.S.C. §1983 ....................................................................... 10 and passim

N.Y. Const. Art. 1, § 9(1) ....................................................... 10 and passim

N.Y. Const. Art. 1, §§ 1 and 11................................................. 11 and passim

N.Y. Exec. Law § 296(13) ....................................................... 11 and passim

## PRELIMINARY STATEMENT

This action arose out of the Defendant, The Board of Education of the White Plains City School District's (hereinafter "School District") decision to terminate its contract with Plaintiff, Space Age Alarm, Inc. (hereinafter referred to as "Plaintiff" or "Space Age"). Plaintiff was hired to provide labor/materials and service in connection with the School District's security and fire alarm systems. The value of the two contracts was $18,444.00. The contract was lawfully terminated by the School District based upon Plaintiff's wholesale failure to perform. Specifically, Plaintiff failed to install alarm equipment as required by the contracts.

Plaintiff seeks declaratory and injunctive relief as well as monetary damages for a wide variety of perceived grievances and violations of state and federal law against the Defendant School District and Defendant Michael J. Lynch, the School District's Director of Facilities and Operations. This Memorandum of Law and all accompanying documents are submitted in support of the Motion made by Defendants School District and Michael J. Lynch to dismiss the Plaintiff's claims pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Plaintiff may not sustain a claim against the School District or Michael Lynch because: (1) Plaintiff has failed to comply with the Notice of Claim requirements of Section 3813 of the New York State Education Law; (2) Plaintiff has failed to state a claim upon which relief can be granted; and (3) in the event the federal claims are dismissed and any state law claims remain, the Court should decline to exercise jurisdiction over those state law claims.

1

## STATEMENT OF FACTS

The safety of students and staff is of paramount importance to the School District. <u>See</u> Affidavit of Fred Seiler, Assistant Superintendent of Business for the School District at ¶4 (hereinafter "Seiler Aff. ¶__") . In fulfilling this obligation, the School District utilizes both fire and security alarm systems. <u>See</u> Seiler Aff. ¶4. The systems are installed, maintained, updated, serviced and monitored by contractors. <u>See</u> Seiler Aff. ¶4. In anticipation of the 2007-08 school year the School District sought competitive bids for the monitoring, maintenance and installation of materials for both its fire alarm and security alarm systems. <u>See</u> Complaint ¶7. The bid specifications set forth the terms and conditions under which the successful bidder would be required to perform.[1] A copy of the two contracts which are referenced in the Complaint are annexed to the Seiler Aff., Exhibits A and B. Importantly and relevant to this lawsuit, the bid specifications required the contractor to provide new communications equipment. The relevant provisions in the contract documents are as follows:

## FIRE ALARM SYSTEM CONTRACT PROVISIONS

- o "Monitoring Requirements: (1) **Provide annunciator panel/keypad in each location**; (2) **Provide labor, materials, and parts to monitor the fire alarm system**" p. 24. [bold added].

- o "Pursuant to and in compliance with your advertisement for bids dated 2:00 P.M., Wednesday, May 24, 2006 the undersigned, having become familiar with the local conditions affecting the cost of work, the working drawings, the specifications, including advertisement for bids, instruction to bidders, form of agreement, the detailed specifications and addenda nos. ___, hereto, and having examined the site, hereby proposes to **furnish all labor, materials, transportation and equipment necessary** or required for the performance and completion in a workmanlike manner of all work in strict accordance with the

---

[1] The Fire Alarm Bid is identified as Bid #2007-15. The Security Alarm Bid is identified as Bid #2007-16.

contract documents and drawings and with all addenda . . . ." p. 11. [bold added].

o "It is the intention of this specification to **include all labor, material and equipment** to provide a one year maintenance contract for the Fire Alarm Systems located in various school district sites." p. 24. [bold added]

o "GENERAL CONDITIONS:
  o (3) <u>Scope</u>: (b) The contractor **shall furnish all labor, implements and materials** required in the construction of the work . . . " p. 19. [bold added]
  o (13) <u>Use of Present Material</u>:   **Unless otherwise specified, it is the intention that new materials shall be furnished**, but if during the progress of work, it is found that present materials are sound and of proper quality and dimensions, as required by the plans, details and specifications, the Contractor may use the same, provided they are acceptable to and have first been approved by the Director of Facilities and Operations." P. 21 [bold added].

Exhibit A.

## SECURITY (BURGLAR) ALARM SYSTEM CONTRACT PROVISIONS

o "Monitoring Requirements: (1) **Provide new key pad and communicator device**; (2) **Provide labor, materials, and parts to monitor the security alarm system**" p. 25. [bold added].

o "Pursuant to and in compliance with your advertisement for bids dated 2:00 P.M., Friday, May 18, 2006 the undersigned, having become familiar with the local conditions affecting the cost of work, the working drawings, the specifications, including advertisement for bids, instruction to bidders, form of agreement, the detailed specifications and addenda nos. ___, hereto, and having examined the site, hereby proposes to **furnish all labor, materials, transportation and equipment necessary** or required for the performance and completion in a workmanlike manner of all work in strict accordance with the contract documents and drawings and with all addenda . . . ." p. 12. [bold added].

o "It is the intention of this specification to **include all labor, material and equipment** to provide a one year maintenance contract for the Security Alarm Systems located in various school district sites." p. 25. [bold added]
o "GENERAL CONDITIONS:
  o (3) <u>Scope</u>: (b) The contractor **shall furnish all labor, implements and materials** required in the construction of the work . . . " p. 20. [bold added]

o  (13) **Use of Present Material**:  **Unless otherwise specified, it is the intention that new materials shall be furnished**, but if during the progress of work, it is found that present materials are sound and of proper quality and dimensions, as required by the plans, details and specifications, the Contractor may use the same, provided they are acceptable to and have first been approved by the Director of Facilities and Operations." P. 21 [bold added].

Exhibit B.

Both contracts have identical termination clauses:

Cancellation of Contract:  The School District reserves the right to cancel the contract by giving one week's written notice for unsatisfactory service. The City School District shall be the sole judge of what constitutes satisfactory or unsatisfactory service on the part of the contractor.

Exhibit A, p. 25.
Exhibit B, p. 25.

Plaintiff's bids were reviewed by the School District.  Thereafter, Defendant Michael Lynch, the Director of Facilities and Operations at the School District, and Plaintiff conducted a walk-through of the school buildings.  See Complaint ¶8.  After the walk-through, by letter dated June 4, 2007, Plaintiff indicated that it did not believe that the communications equipment already installed would require replacement. See Complaint ¶8.  In response to Plaintiff's assertions, Lynch sent a letter to Plaintiff stating that the bids required the successful bidder to provide new communications equipment. See Complaint ¶¶9 and 11.

Thereafter, on June 11, 2007, the Board of Education awarded Plaintiff the aforementioned security and fire alarm systems contracts. See Complaint ¶¶15 and 16. The security alarm system contract awarded to Plaintiff was for was $7,722.00.  The fire

alarm system contract awarded to Plaintiff was $10,722.00.  **The total amount of both contracts was $18,444.00.**  See Exhibits A and B.

Plaintiff alleges that the School District was obligated to provide codes which would allow the Plaintiff to use the old communications equipment already in the buildings. <u>See</u> Complaint ¶¶18-26.  However, even Plaintiff concedes that, before the contracts were awarded, the School District made clear that the old codes were irrelevant and unneeded because the contracts required Plaintiff to install new communications equipment. <u>See</u> Complaint ¶9; and Seiler Aff. Exhibits A and B.  Since the contracts were awarded, Plaintiff failed to, indeed refused to, install the communications equipment as required. <u>See</u> Complaint ¶¶18-28.  Instead, Plaintiff demanded to be allowed to use the old equipment.  <u>Id.</u>  If Plaintiff had installed its own communications equipment as required, it would have been able to monitor all of the alarm systems.

As a result of Plaintiff's failure to install the new communications equipment, on July 19, 2007, Lynch forwarded a letter to Plaintiff stating that the Board of Education would be considering terminating Plaintiff's contracts as a result of its failure to fulfill its contractual obligations.  <u>See</u> Complaint ¶25.  On the evening of August 6, 2007, the Board of Education convened a public meeting at which Plaintiff and its counsel attended and had the opportunity to address the Board. <u>See</u> Complaint ¶¶45, 48, 51 and 78.  At the time, the Board did not act to terminate the contracts in the hope that Plaintiff would comply with its contractual obligations. <u>See</u> Complaint ¶52.

Notwithstanding, Plaintiff did not install new equipment but engaged in a self-serving letter writing campaign demanding that the School District allow it to use the old equipment. <u>See</u> Complaint ¶¶ 8, 18-22, 25, 31-33, 41, 44, 46, 58.  The failure to install the new equipment was a substantial breach of the contract because, without the new equipment, Plaintiff could not operate the alarm systems.

On August 9, 2007, the School District began to solicit bids for security and fire alarm contracts as a preventative measure should Plaintiff fail to fulfill its contractual obligations and its alarm contracts be terminated. <u>See</u> Complaint ¶53, Seiler Aff. ¶12.

Plaintiff has never explained why it is not required to install new communications equipment as the contract requires.  After giving Plaintiff multiple opportunities to comply with its contractual obligations, and left with no other choice as the first day of school was fast approaching, on August 27, 2007, at a public meeting of the Board of Education, the Board voted to terminate Plaintiff's contracts.  <u>See</u> Seiler Aff. ¶ 14.  Plaintiff was advised that the contracts would be terminated effective September 5, 2007.  <u>See</u> Seiler Aff. ¶ 16.

## ARGUMENT

Plaintiff cannot state a claim against the School District and Lynch because it failed to give notice in accordance with the requirements of N.Y. Education Law §3813.  Additionally, Plaintiff fails to state a claim upon which relief may be granted.  In ruling on a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the task of the Court is to assess the legal feasibility of the complaint.  <u>See</u> <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998).  The Court is required

to accept as true all factual allegations in the complaint and to consider documents attached to and incorporated by reference in the complaint. See Berheim v. Litt, 93 F.3d 318, 321 (2d Cir. 1996). Although the pleading standard is a liberal one, bald assertions and conclusions of law are insufficient to defeat a motion to dismiss the complaint. See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). As will be demonstrated *infra*, there is simply no theory upon which Plaintiff may recover, and many insurmountable legal obstacles to proceeding with this action.

Should the federal claims be dismissed and any state law claims remain, the Court should decline to exercise jurisdiction over state law claims.

## I.

## PLAINTIFF HAS NOT COMPLIED WITH THE STATUTORY REQUIREMENTS FOR COMMENCING AN ACTION AGAINST A SCHOOL DISTRICT OR ITS EMPLOYEES

Plaintiff's failure to comply with the notice requirements set forth in Section 3813 of the New York Education Law defeats any claim it would have been able to assert against the School District or Lynch. Section 3813(1) states:

> No action or special proceeding, for any cause whatever, except as hereinafter provided, relating to district property or property of schools provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four or claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four or any officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon

which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. In the case of an action or special proceeding for monies due arising out of contract, accrual of such claim shall be deemed to have occurred as of the date payment for the amount claimed was denied.

N.Y. Educ. Law § 3813(1) (McKinney 2007).

Thus, under Section 3813 no action or special proceeding for any cause shall be prosecuted or maintained against any school district or its employees unless it appears by an allegation in the complaint that a written verified claim upon which such action was founded was presented to the governing body of the school district within three months after the accrual of the claim, and that the officer or body having authority to pay the claim refused or neglected to make payment. See N.Y. Educ. Law § 3813(1) (McKinney 2006); see also Parochial Bus Systems v. Bd. of Educ., 60 N.Y.2d 539, 547-48, 470 N.Y.S.2d 564 (1983).

The requirements of this section act as a "condition precedent" to the institution of an action against a school district. See Public Improvements, Inc. v. Board of Educ. of City of New York, 56 N.Y.2d 850, 852, 438 N.E.2d 876, 877, 453 N.Y.S.2d 170, 171 (1982). The Plaintiff may not be relieved of this "positive statutory mandate," even if no prejudice has resulted to the defendant, and "even to avoid a harsh result." Parochial Bus Systems, 60 N.Y.2d at 548, 458 N.E.2d at 1245, 470 N.Y.S.2d at 568.

This rule of law applies equally to discrimination suits and contract claims. See, e.g., Courtemanche v. Enlarged School District of the City of Middletown, 686 F. Supp. 1025 (S.D.N.Y. 1988) (failure to comply with notice of claim requirements of Section

3813 is fatal to a contract claim); <u>Biggers v. Brookhaven-Comsewogue Union Free Sch.</u>

<u>Dist.</u>, 127 F. Supp.2d 452, 455-56 (S.D.N.Y. 2001)(applying New York law and

dismissing N.Y. Human Rights Law claim for plaintiff's failure to file a notice of claim

under Section 3813(1) of the Education Law).

Plaintiff did not serve a written verified Notice of Claim upon the School District

or Lynch, much less one within the three-month period after the accrual of the claim.

<u>See</u> Seiler Aff. ¶17.  Moreover, Plaintiff did not allege in its Complaint that it complied

with Section 3813 of the Education Law.  <u>See generally</u> Complaint.  Not only is this

omission fatal to Plaintiff's claims, it subverted the School District's and Lynch's

statutory right to a hearing pursuant to Section 50-h of the General Municipal Law.  As

a result, Plaintiff may not maintain its claims against the School District or Lynch

because of its own failure to comply with the requirements of Section 3813 of the

Education Law and as a result those claims should be dismissed.

## II.

## PLAINTIFF HAS NOT ALLEGED ANY FACTS WHICH SHOW RACE PLAYED ANY PART IN THE DECISION TO TERMINATE THE ALARM CONTRACTS

Plaintiff alleges that the School District and Lynch terminated the alarm contracts

based upon the race of the Plaintiff's owners (African-American).  Such a claim is not

only factually outrageous, but Plaintiff fails to provide a scintilla of evidence in its one

hundred and five (105) paragraph Complaint that race was a factor in the Board's

decision to terminate the contracts.

The only factual allegations that even allude to race are the following:

> 62.     African-Americans own the majority, if not all, of the issued and outstanding stock of Space Age.
> 63.     Upon information and belief, Caucasians own the majority, if not all, of the issued and outstanding stock of Alarm Specialists.

See Complaint, p. 13.

It appears Plaintiff's claims for relief alleging racial discrimination are based upon violations of: (1) 42 U.S.C. §1983 (counts I and II)[2]; (2) 42 U.S.C. §1981 (count III)[3]; (3) N.Y.S. Const. Art. 1, §9 (count IV)[4]; (4) N.Y. Const. Art. 1, §§ 1 and 11 (count V)[5]; and (5) N.Y. Exec. Law §296(13) (count V)[6].

---

[2] 42 U.S.C.§ 1983 – "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[3] 42 U.S.C. § 1981(a) - "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[4] N.Y. Const. Art. 1, § 9(1) – "No law shall be passed abridging the rights of the people peaceably to assemble and to petition the government, or any department thereof; nor shall any divorce be granted otherwise than by due judicial proceedings; except as hereinafter provided, no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling, except lotteries operated by the state and the sale of lottery tickets in connection therewith as may be authorized and prescribed by the legislature, the net proceeds of which shall be applied exclusively to or in aid or support of education in this state as the legislature may prescribe, and except pari-mutuel betting on horse races as may be prescribed by the legislature and from which the state shall derive a reasonable revenue for the support of government, shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

**A.    Plaintiff's Naked Allegations Fail to Allege
Even the Slightest Hint of Discriminatory Conduct**

It is well settled that any claim for relief, including those "relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987).  To survive a motion to dismiss, a plaintiff's complaint must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994). "**[N]aked assertions** by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] **are too conclusory**." Reyes v. Erickson, 238 F. Supp. 2d 632, 638 (S.D.N.Y. 2003) (bold added) (Latino tenants of apartment buildings failed to state Section 1981 claim in breach of contract when they alleged landlord discriminated by transferring

---

[5] N.Y. Const. Art. 1:

§ 1 - "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his or her peers, except that the legislature may provide that there shall be no primary election held to nominate candidates for public office or to elect persons to party positions for any political party or parties in any unit of representation of the state from which such candidates or persons are nominated or elected whenever there is no contest or contests for such nominations or election as may be prescribed by general law."

§ 11 - "No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."

[6] N.Y. Exec. Law § 296(13) - "It shall be an unlawful discriminatory practice (i) for any person to discriminate against, boycott or blacklist, or to refuse to buy from, sell to or trade with, any person, because of the race, creed, color, national origin, sexual orientation, military status or sex of such person, or if such persons partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers or customers, or (ii) for any person willfully to do any act or refrain from doing any act which enables any such person to take such action."

buildings to third party instead of to the tenants because the complaint lacked necessary specific factual allegations of discrimination); see also Yusuf, 35 F.3d at 713-14 (Court concluded that claim consisted of only naked allegations and dismissed Section 1981 claim because plaintiff offered no reason to suspect discrimination, and complaint contained a number of other, race-neutral factors).[7]

Recently, a judge in the Southern District dismissed a case nearly identical to the one at bar, on the ground that the plaintiff set forth no facts to support its claim of discrimination. See World Religious Relief v. Sirius Satellite Radio, Inc., No. 05-CV-8257, 2007 WL 2261549 (S.D.N.Y. Aug. 7, 2007) (copy annexed to motion papers). The plaintiff, World Religious Relief ("WRR"), which provided radio programming that targeted African-Americans, contracted with the defendant radio company to broadcast/market WRR's radio program. The radio company terminated the contract due to poor ratings. WRR claimed that the termination of the contract was an act of discrimination in violation of both 42 U.S.C. §1981 and N.Y. Executive Law §296(13). The complaint specifically claimed:

> - No non-African American, non-religious programming providers carried by Sirius received similarly inadequate marketing services from Sirius;
> - no non-African American, non-religious programming providers carried by Sirius with similarly "poor ratings" had their contracts terminated;
> - no non-African American, non-religious programming providers carried by Sirius were required to "catapult its required payments to Sirius from $40,000 to multi-millions of dollars in order to be carried on Sirius's satellite;"
> - Sirius's reason of "poor ratings" for declining to renew the contract is a pretext for racial and religious discrimination;

---

[7] These pleading requirements "apply with equal force" to federal and state law claims. See Alie v. Nynex Corp., 158 F.R.D. 239, 244 (E.D.N.Y. 1994).

- Sirius's refusal to renew the agreement, failure to adequately promote [WRR], and request for millions of dollars to keep [WRR] on its network is part of a concerted effort to remove African-American and religious programming providers from Sirius's satellite network; and
- Sirius has infringed on [WRR's] right to make and enforce contracts.

Id. at *2-3.

Although WRR's allegations are much more specific than those set forth by Plaintiff, the court, relying on Yusuf, still found them to be "conclusory allegations" and "insufficient to support an inference of racial discrimination." Id. at *3. See also Odom v. Columbia Univ., 906 F. Supp. 188, 194-95 (S.D.N.Y. 1995) (in granting Rule 12(b)(6) motion on a Section 1981 claim, court explained that "[the plaintiff] does not allege any facts that support a conclusion that [the defendant's] conduct was the result of purposeful race-based discrimination.").

Plaintiff's allegations in its Complaint are equally deficient and do not support an inference of discriminatory intent.  Rather, the Complaint shows the relationship between Plaintiff and the School District to be merely contractual.  Plaintiff has not made a simple allegation that any person from the School District made any racially charged comments or exhibited behavior which was discriminatory to support its claims.[8]

---

[8] Interestingly while Plaintiff makes note of its racial composition, Plaintiff omits from its Complaint that the Board of Education is comprised of persons who are the same race as Plaintiff's principals – two (2) of the seven (7) elected members are African-Americans.  See Seiler Aff. ¶8.  These are the same members of the Board who both authorized the contracts to be entered into with Plaintiff on June 11, 2007, and, a short time later on August 27, 2007, authorized the termination of the contracts it had with Plaintiff.  Id.  This fact undeniably shows the School District acted without a discriminatory intent and Plaintiff's failure to counter this fact in its Pleadings is fatal to its claims.  See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.  This is especially so when the firing has occurred only a short time after the hiring").

**B.     Plaintiff Fails to State a Claim Under
        N.Y. Human Rights Law Section 296(13)**

Plaintiff's claim in Count V under N.Y. Executive Law Section 296(13) is similarly without merit. <u>See</u> fn. 6 herein.  The Complaint does not contain any allegations to demonstrate how the School District and Lynch engaged in a formal boycott or blacklisted any contractors, including Plaintiff, based upon race.  The Court of Appeals has provided guidelines under which such claims must be measured.  In <u>Scott v. Massachusetts Mut. Life Ins. Co.</u>, 86 N.Y.2d 429, 657 N.E.2d 769, 633 N.Y.S.2d 754 (1995), an insurance agent sued the insurance company under, *inter alia*, Section 296(13) of the Executive Law because the company terminated her agency contract based upon her gender, age and marital status.  The claim was ultimately dismissed because the insurance agent could not provide any evidence that, "[1] the contract termination was propelled by or a result of defendants' desire to collectively discriminate against a protected class that includes plaintiff . . . [2] the termination was the result of a blacklisting or commercial boycott of women, or of persons of her age or marital status . . . [or, 3] that the contract cancellation was part of a larger pattern of dealing or policy instituted by defendants in a concerted effort to disadvantage females economically." <u>Id.</u> at 436, 773 and 758; see <u>also</u> <u>Mehtani v. N.Y. Life Insurance Co.</u>, 145 A.D.2d 90, 95, 537 N.Y.S.2d 800 (1st Dep't. 1989), <u>app. dismissed</u>, 74 N.Y.2d 835 (1989), <u>app. denied</u>, 85 N.Y.2d 806 (1995) (person of Indian descent who was discharged had no cause of action under Section 296(13), insofar as it applied only to blacklisting or commercial boycott actions or actions aimed at a particular group).

Therefore, Plaintiff has not established the type of unlawful boycott or refusal to deal which is encompassed by Section 296(13) and that claim should be dismissed. Importantly, Plaintiff has not alleged any facts which would show that the School District or Lynch boycotted or blacklisted or supported that conduct; or refused to deal with African-Americans as a group; or that the termination of the alarm contracts were part of a sinister plan to disadvantage or disenfranchise African-Americans.

Thus, Plaintiff's claims of racial discrimination in Counts I, II, III, IV and V should be dismissed.

III

### PLAINTIFF FAILS TO STATE A CLAIM FOR A 42 U.S.C. §1983 VIOLATION

Plaintiff claims Fourteenth (procedural and substantive due process) (Count I) and First Amendment (right to petition) (Counts II and IV) violations which are allegedly actionable under 42 U.S.C. § 1983 as a result of the termination of the alarm contracts. However, Plaintiff has not pled facts which would support such claims.

**A.    Plaintiff's Procedural Due Process Claim Cannot
         Be Maintained Because Plaintiff Was Not
         Deprived of a Constitutionally-Protected Property Interest**

To state a claim for violation of procedural due process rights under 42 U.S.C. § 1983, Plaintiff must first establish that it has suffered a deprivation of a Constitutionally protected property interest and that such deprivation was committed by persons acting under color of state law. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If a protected interest is identified, plaintiff must then plead facts which show that it was deprived of that interest without due

15

process. See Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (2d Cir. 1988). Plaintiff cannot plead that it was deprived of Constitutionally protected due process rights because Plaintiff has no protected property rights by virtue of its being a party to a public works contract. Even if Plaintiff had a protected property right, Plaintiff was afforded adequate pre- and post-deprivation due process.

### i. Plaintiff Was Not Deprived of a Constitutionally Protected Property Interest

The allegations Plaintiff makes in its Complaint involve, at best, a public contract dispute, not a deprivation of Constitutional rights. Plaintiff claims a Constitutionally protected interest in the alarm contracts. In defining a property interest the Supreme Court stated "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. Using the Supreme Court's framework, New York courts and the Second Circuit have failed to extend property interest protection to general contractual disputes.

The Second Circuit in S & D Maint. Co., Inc. v. Goldin, 844 F.2d 962 (2d Cir. 1988) reviewed the Roth analysis in the context of a government sponsored construction contract. In that case, the government withheld contract payments pending the outcome of a corruption investigation surrounding the award of contracts. See Id. at 964. The contractor threatened to suspend performance and as a result, the government terminated the contract. The contractor filed an action under Section 1983.

16

The Second Circuit acknowledged that the word "property" has an expansive meaning within the law, but refused to extend that meaning to cover public contracts or the right to continue those contracts. Id. at 967. The Court specifically stated that it was hesitant "to extend [procedural due process protection] further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor." Id. at 967. "An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as "property" entitled to procedural due process protection," i.e., public employment and public benefits. Id. at 966. Thus, no protected property interest was found and the court determined state claims for breach of contract provided all the remedies needed. See Id. at 967-69.

Other courts in this Circuit have since followed the holding in S&D Maintenance. See Empire Transit Mix, Inc. v. Giuliani, 37 F. Supp.2d 331, 335-336 (S.D.N.Y. 1999) (concrete supplier had no property interest in its supply contracts with contractors on city projects), quoting Eastway Constr., Corp. v. City of New York, 762 F.2d 243, 249-250 (2d Cir. 1985) (general contracting firm had no protected property interest in its continued participation in public redevelopment projects); Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1351-52 (2d Cir. 1994) (contractor performing maintenance contract for Board of Education had no property right in immediate payment or continuation of existing contracts pending determination by board of review whether contractor was in default, where contracts granted Board of Education considerable discretion in approving and paying for contractor's work).

17

The at-issue contracts required Plaintiff to maintain and install alarm systems in school buildings.  There were no other promises or rights afforded Plaintiff, and the contracts were not guaranteed for all time.  In fact, the School District had broad discretion to terminate the contracts should Plaintiff provide "unsatisfactory service" and the School District was the "sole judge of what constitutes unsatisfactory service." See Exhibits A & B, p. 25.  The School District exercised this discretion when it determined that Plaintiff did not fully comply with the contractual requirements (i.e., provide and install new communications equipment).  Because Plaintiff alleges only what it believes to be a wrongful termination of the alarm contracts, Plaintiff fails to allege a Constitutionally protected property interest, thus, its Section 1983 claim for procedural due process violations should be dismissed in its entirety.

> **ii.   Even if a Property Interest is Found, Plaintiff
> was Given Due Process Before the Contracts were
> Terminated and had Adequate Remedies Available**

Assuming *arguendo* that Plaintiff had a property right in the contracts, which the School District denies, it had adequate pre- and post-termination due process remedies available.  In general, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinerman v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  While Plaintiff makes the broad generalization that it did not receive due process before the contracts were terminated, Plaintiff does not plead any specific facts in support of its claims.  Instead, the Complaint is replete with admissions that Plaintiff was afforded the opportunity to meet with the Board and indeed did speak with the Board. See Complaint ¶¶45, 48, 51 and 78.  Plaintiff provided

its understanding of the contract obligations on a number of occasions.  See Complaint ¶¶8, 18-22, 25, 31-33, 41, 44, 46, 58. Moreover, the contracts themselves give the School District wide latitude in determining whether Plaintiff fulfilled its contractual obligations. See Exhibits A & B, p. 25.

"And even if all public contract rights warranted the procedural protections of due process, there would be a substantial argument that in most circumstances post-deprivation state court remedies would provide all the process that is due." S & D Maintenance Co., Inc., 844 F.2d at 966; see also Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996) ("[a]n Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that [it] could in a § 1983 suit").

Therefore, because there were adequate pre- and post-termination procedures to remedy the alleged deprivation of property, the School District and Lynch did not deny Plaintiff any due process rights.  Accordingly, Plaintiff cannot maintain a § 1983 claim and Count I should be dismissed.

**B.     Plaintiff has not Pled a Claim for a
         Substantive Due Process Violation**

Plaintiff fails to allege any factual allegations which would give rise to a substantive due process violation. (Count I).  Generally, an interest which would garner substantive due process rights includes the rights of privacy, family and procreation; i.e., those rights that are so central to an individual's freedom that "neither liberty nor justice would exist if [they] were sacrificed." Empire Transit Mix, 37 F. Supp.2d at 339 (quoting Bowers v. Hardwick, 478 U.S. 186, 191-92, 106 S. Ct. 2841, 92 L. Ed.2d 140

(1986)). Generally, simple contract claims do not rise to this level unless, in the rare circumstance, the deprivation is "so dramatic and the rights implicated so fundamental that the Constitution provides a remedy." Empire Transit Mix, 37 F. Supp.2d at 339 (interests affected by city's debarment of supplier from city projects were not protected by substantive due process notwithstanding substantial amount of supplier revenue was dependent on city contract); cf. Escalera v. N.Y. City Housing Auth., 425 F.2d 853, 861 (2d Cir. 1970) (protectable property interest in leases for public housing), cert. denied, 400 U.S. 853, 91 S. Ct. 54, 27 L. Ed.2d 91 (1970). In fact, the Second Circuit in applying substantive due process principles in the context of a state labor contract, stated that "simple state-law contractual rights, without more, are [not] worthy of substantive due process protection." Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) (Town's termination of trust as health benefits provider did not violate union's substantive due process rights, as union possessed no protectable property interest in premium payments to trust).

The termination of Plaintiff's $18,444.00 alarm contracts by the School District does not give rise to a substantive due process claim. Plaintiff's sole charge is that the School District and Lynch wrongfully terminated the alarm contracts. See Complaint ¶70. Plaintiff has not alleged, and cannot allege, that the contracts are central to its fundamental rights. Nor has Plaintiff alleged that the termination of those contracts was done in such a fashion as to shock the conscience. Simply stated, Plaintiff has not alleged any facts which would sustain a possible claim of a substantive due process

violation. Thus, this claim as set forth in Count II should be dismissed.

### C.   Plaintiff Failed to Plead Facts Sufficient to State a Claim that the School District and/or Lynch Hindered its Right to Petition the Board of Education

Plaintiff's Complaint is filled with admissions that Plaintiff was <u>continually</u> afforded the opportunity to petition the Board of Education and Lynch via Board meetings and correspondence.   Thus, Plaintiff's charge that the School District and Lynch violated Plaintiff's First Amendment (Count II) and State Constitution, Art. 1, §9 (Count IV) petition rights are belied by the Complaint itself.

Specifically, Plaintiff's Chief Executive Officer and its counsel attended the August 6, 2007, Board of Education meeting and indeed addressed the Board and members of the School District's administration, including Lynch.  <u>See</u> Complaint ¶¶45, 48-52 and 78.  At this very meeting, Plaintiff's counsel even served the Board with a number of documents related to its position.  <u>See</u> Complaint ¶48.  There are no allegations that Plaintiff or its attorney was ever prevented from speaking at any Board meeting, including the one held on August 6, 2007.  Plaintiff also concedes that he engaged in a significant letter writing campaign with the School District in order to assert its point of view.  <u>See</u> Complaint ¶¶ 31-32, 40, 44, 46 and 58.

The basis of Counts II and IV is that the School District did not respond to Plaintiff's petitions in a fashion favorable to Plaintiff, i.e., that the School District and Lynch should have accepted Plaintiff's interpretation of the contracts and not moved to terminate them.  <u>See</u> Complaint ¶¶36, 42, 47, and 59.  Plaintiff does not possess a right to require the School District or Lynch to agree with its claims or even respond to those

claims in a fashion it deems acceptable.  In <u>Kittay v. Giuliani</u>, 112 F. Supp.2d 342, 354 (S.D.N.Y. 2000), plaintiff challenged  the constitutionality of zoning regulations enacted to protect New York City's watershed, in particular claiming a First Amendment violation due to prevention of its ability to petition the government for redress when local government officials contracted away the right to challenge certain regulations in the future.  In dismissing the First Amendment claim the Court stated:

> [The First Amendment] does not guarantee, as plaintiff contends, that governmental officials may not enter agreements terminating, settling or prospectively avoiding litigation, **nor does it ensure that an elected official will necessarily act a certain way or respond in a certain manner to requests from his constituents**.

<u>Id.</u> (bold added) (<u>citing</u> <u>Minn. State Bd. for Community Colleges v. Knight</u>, 465 U.S. 271, 285, 104 S. Ct. 1058, 1066, 79 L. Ed.2d 299 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting [the Constitution] suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.")); <u>see also</u> <u>Pickering v. Flacke</u>, 115 Misc.2d 264, 453 N.Y.S.2d 1016 (N.Y. Sup., Erie Cnty. 1982) (court rejected Art. 1, §9 of the State Constitution defense and in doing so stated "[t]he right to petition, therefore, includes the freedom to ask, demand, or call upon one's government to act, or to change its policy or law. It does not insure, as a court order following a lawsuit would, that the government will respond as a citizen desires, or for that matter, will respond at all.").

While the School District disputes Plaintiff's claim that it did not respond to Plaintiff, for the purposes of this Motion to Dismiss, even if Plaintiff is correct, it has not

pled a claim for which relief can be granted.  The School District and Lynch have no Constitutional obligations to respond to petitions made by Plaintiff.  Thus, Counts II and IV should be dismissed.

IV

## <u>PLAINTIFF FAILS TO ALLEGE A STATE LAW EQUAL PROTECTION CLAIM</u>

Plaintiff's Complaint fails to allege an Equal Protection claim.  In Count V, Plaintiff claims violations of its Equal Protection rights afforded to it under Article 1, §§1 and 11 of the New York State Constitution.[9]  The Second Circuit recently reiterated that the fundamental premise of equal protection is that "the government treat all similarly situated people alike."  <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005). To state an Equal Protection claim, a plaintiff must allege that: (1), compared with others similarly situated, the plaintiff was selectively treated; and (2) the selective treatment was based on impermissible considerations such as race.  <u>See Crowley v. Courville</u>, 76 F.3d 47, 52-53 (2d Cir. 1996).  Accordingly, the cornerstone of any equal protection claim is that a plaintiff demonstrates that it was treated differently from similarly situated individuals.  <u>See</u>, <u>e.g.</u>, <u>Brady v. Town of Colchester</u>, 863 F.2d 205, 216 (2d Cir. 1988).[10]

Plaintiff merely claims that its principals are African-American.  <u>See</u> Complaint ¶61.  It is clear Plaintiff's equal protection claim is insufficiently pled as it lacks any

---

[9] In Count V, Plaintiff also alleges a violation of Section 296(13) of the New York State Executive Law. This is discussed *supra*.

[10] The Complaint does not allege a federal Equal Protection violation.  Nevertheless the protections afforded by the Fourteenth Amendment and the New York Constitution, Art. 1, §11 are equal and should be analyzed as such.  <u>See Dorsey v. Stuyvesant Town Corp.</u>, 299 N.Y. 512, 530-31, 87 N.E.2d 541, 548, 14 A.L.R.2d 133 (1949).

allegation that there *are* any similarly-situated contractors, let alone that it was treated differently from them based upon race.  See Generally Complaint.  Accordingly, Count V which claims an equal protection violation should be dismissed.

V

**PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION
FOR DAMAGES TO ENFORCE N.Y. EDUCATION LAW §2513**

Plaintiff has failed to allege facts that that would sustain a claim that the School District and Lynch violated Education Law §2513 (Count VI).  Education Law §2513 requires the School District to follow the bidding requirements of General Municipal Law §103.  Specifically, §2513 states:

> The board of education shall let all contracts for public work and all purchase contracts to the lowest responsible bidder after advertisement for bids where so required by section one hundred three of the general municipal law.

N.Y. Educ. Law §2513 (McKinney's 2007).

It is undisputed that the School District properly bid and awarded the alarm contracts in question to Plaintiff.  It is equally undisputed that after Plaintiff's termination, the School District properly re-bid and awarded the alarm contracts to the lowest responsible bidder in full and complete compliance with General Municipal Law Section 103 and Education Law Section 2513.  Plaintiff has set forth no factual allegations to the contrary.  See generally Complaint.

Moreover, the only party who can possibly assert a grievance under Section 103 or Section 2513 is an "unsuccessful bidder," which Plaintiff was not.  Accordingly there is no private right of action for Plaintiff as it was the successful bidder, and, but for

24

Plaintiff's breach of those contracts, would have been a party to them today.    In addition, monetary damages are not a permissive remedy.  See Stride Contracting Corp. v. Board of Contract and Supply of City of Yonkers, 181 A.D.2d 876, 581 N.Y.S.2d 446 (2d Dep't. 1992) (unsuccessful bidder on public works project did not have statutory right to damages by reason of city's refusal to award it contract or right to damages on common-law theory of breach of contract); White & Prentis, Inc. v. Southwest Sewer Dist., 103 A.D.2d 802, 477 N.Y.S.2d 681 (2d Dep't. 1984), appeal dismissed, 63 N.Y.2d 607, 472 N.E.2d 49, 482 N.Y.S.2d 1024 (1984) (unsuccessful bidder was not entitled to recover from municipality the profits which he might have made had his bid been accepted, and same was true even if fraud was established).  Based upon the foregoing, Count VI of the Complaint should be dismissed.

## CONCLUSION

For all the foregoing reasons set forth in the Motion to Dismiss, the School District and Michael Lynch should be granted dismissal of Plaintiff's claims for relief.

Dated:        Hauppauge, New York
              October 26, 2007

                              BY:    _____
                                     Michael G. McAlvin (MM-6074)
                                     INGERMAN SMITH, LLP
                                     Attorneys for Defendants
                                     WHITE PLAINS CITY
                                     SCHOOL DISTRICT and
                                     MICHAEL LYNCH
                                     150 Motor Parkway, Suite 400
                                     Hauppauge, New York 11788
                                     (631) 261-8834

25

To:

Leroy Wilson, Jr., Esq.
Wilson Jacobson, P.C.
Attorneys for Plaintiff
SPACE AGE ALARMS, INC.
The Inns of Court Building
99 Court Street, Suite 2
White Plains, New York 10601
(914) 997-0825
Fax: (914) 994-0830

Hugh G. Jasne, Esq.
Jasne & Florio, L.L.P.
Attorneys for Defendant
ALARM SPECIALISTS, INC.
525 North Broadway
White Plains, New York 10603
(914) 997-1212
Fax: (914) 682-8692