Wilson Jacobson, P.C.
The Inns of Court Building
99 Court Street
Suite 2
White Plains, New York 10601-4264
(914) 997-0825
FAX (914) 997-0830

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X   File No. 07 CV 7606(CLB) (MDF)
SPACE AGE ALARMS, INC.,                                         ECF CASE

       Plaintiff
                                                                JOHNSON AFFIDAVIT IN
-against-                                                       OPPOSITION TO THE BOARD
                                                                AND LYNCH'S MOTION TO
THE BOARD OF EDUCATION OF THE                                   DISMISS
WHITE PLAINS CITY SCHOOL DISTRICT,
MICHAEL J. LYNCH AND ALARM
SPECIALISTS, INC.

       Defendants.
------------------------------------------------------------X

STATE OF NEW YORK)
COUNTY OF WESTCHESTER) ss.:

CLAUDE JOHNSON, being duly sworn, deposes and says:

    1.    I am the President of Space Age Alarms, Inc. ("Space Age"). We were incorporated to do business in the State of New York in April 3, 1979. We have been providing fire alarm and security alarm services since that date.

    2.    Space Age possesses the following licenses issued by the State of New York: ID # 12000275842. Copies annexed hereto as Exhibit "1."

    3.    Space Age possesses the following Certification by UL Underwriters Laboratories, Inc.: ID # 123506-001. Copies annexed hereto as Exhibit "2."

4.  We submitted a bid on Contract #2007-15 which was to provide monitoring and maintenance of fire alarm systems for the City School District of White Plains, New York and on Bid #2007-16, monitoring and maintenance of security alarm systems for the City School District of White Plains, New York.

5.  We won the bid for both contracts. The Board awarded each contract to Space Age on July 11, 2007.

6.  It is the customary practice to use existing equipment in monitoring and maintenance contracts that have a term of from 1 – 3 years.

7.  In general, a **fire** alarm system is comprised of the following components:

   a. Main Control Panel, the purpose of which is to process various data received from Fire Alarm System component devices.

   b. Annunicator console, the purpose of which is to display system status (etc.)

   c. An on board or slave communicator, the purpose of which is to transmit alarm and trouble signals. Some of the School District's fire alarm systems had an on-board built-in digital communicator that required the use of access codes in order to access the system to perform the service per the contract.

   d. Smoke detectors, the purpose of which is to detect early stages of fire.

   e. Heat detectors, the purpose of which is to detect rapid change in temperature due to fire conditions.

8. In general, a **security** alarm system is comprised of the following components:

   a. Main control panel, the purpose of which is to process various data received from security system component devices.

   b. Key pad console, the purpose of which is to display system status (etc).

   c. On board communicator, the purpose of which is to transmit alarm, trouble and emergency signals. All of the School District's security systems that were installed had built-in digital communicators that required access code capability in order to perform the services required by the contract.

   d. Door/window contacts, the purpose of which is to initiate an alarm condition upon opening.

   e. Motion detectors, the purpose of which is to detect moving body radiation or motion.

9. In order to gain access to the fire alarm system and the security system, Space Age needed the access codes. Verified Complaint, ¶¶ 18 – 26, Exhibit "3."

10. Space Age requested the access codes from Mr. Michael Lynch, Director of Facilities and from the School Board over a period of time. Verified Complaint, ¶¶ 18, 19 – 21, & 38.

11. Glaringly absent from Fred Seiler's affidavit in support of the instant motion is any discussion, whatsoever, of Space Age's need for the access codes as spelled out in the Verified Complaint.

12.     Likewise, glaringly absent from Fred Seiler's affidavit is any discussion of Alarm Specialists' (the prior contractor) lockout of the security system which prevented Space Age from getting access to those systems. Verified Complaint ¶¶ 29 – 40.

13.     Mr. Seiler does not tell the Court that because so many of the systems already have built-in digital communicators (see paragraphs 6.c. and 7.c. above) a contractor would be permitted to use these existing communicators in these kinds of maintenance/monitoring contracts. Otherwise the entire fire and security alarm systems having these digital communicators would have to be replaced. A moment's reflection will demonstrate that the cost of replacing of all these digital systems in the 10 facilities listed at page 9 in Mr. Seiler's Exhibit "A" would far exceed the contract price of $7,722.00 for *monitoring and maintaining* these fire alarm systems. Likewise, the same is true for the cost of replacing of all these digital systems in the 10 facilities listed at page 10 in Mr. Seiler's Exhibit "B"; it would far exceed the contract price of $10,722.00 for *monitoring and maintaining* these security alarm systems[1].

14.     It will be noteworthy to see whether (a) under the new contracts let to Alarm Specialists if it was required to replace and re-install those systems where they contained built in digital communicators, (b) what the new contracts required after they were re-let to Alarm Specialists, and (c) what the total contract value was for Alarm Specialists *installation* of any affected fire and security systems, plus the cost of maintaining and monitoring them.

15.     Mr. Johnson copied the defendant Board and Mr. Lynch on the correspondence with Alarm Specialists complaining that Space Age was not receiving any assistance from Mr. Lynch in gaining access to the security alarm systems. Verified Complaint ¶¶ 41 – 42, Exhibit "3."

---

[1] See Fred Seiler's Affidavit at 3.

4

16. Neither the Board nor Mr. Lynch ever provided plaintiff, Space Age, with the access codes. Verified Complaint, ¶¶ 12, 42.

17. At one point Mr. Lynch imposed a requirement on Space Age that had not been included in any of the contract or bid documents. Verified Complaint, ¶14 (he required that Space Age provide him "...certification that your technicians are factory authorized for maintaining these different fire control panels.")

18. After refusing to provide the access codes and making it impossible for Space Age to perform the fire alarm system contract and the security system contract, Mr. Lynch notified Space Age of his intent to terminate the fire alarm and security alarm systems contract. Verified Complaint, ¶¶ 23 – 26.

19. Space Age infers from the way events unfolded that the Board intended to revert to using its old contractor for the past 11 years, Alarms Specialists, to do the work. Alarm Specialists had lost the contracts to Plaintiff. Verified Complaint, ¶ 28.

20. Since the lawsuit was filed, Space Age has learned that, in fact, the Board did re-let the fire alarm system and the security alarm system contracts to Alarm Specialists, the contractor who had lost the bid to Space Age. We do not know what the Board vote was.

21. Space Age sent its exchange of letters with Mr. Lynch to the Board of Education which outlined the difficulty it was having in gaining access to both systems and the need for these access codes. Verified Complaint, ¶¶ 31 – 32, Exhibit "3" (without attachments).

22. In addition, Space Age put the Board on notice that the old contractor, Alarm Specialists, had actually locked the access codes in the security systems which prevented Space Age from gaining access to the security alarm systems.

23. Alarms Specialists, Inc. refused to remove the lockout that it had placed on the security system or to return the system to the manufacturers default settings. Verified Complaint, ¶¶ 31 – 32, 39 – 41.

24. The Board never responded to Space Age's letters to it. Verified Complaint, Paragraph 42.

25. In addition, Mr. Lynch refused to assist Space Age in removing the access lockout for security systems making it impossible for Space Age to perform Contract #2007-16 and made it inadvisable for Space Age to service the fire alarm system pursuant to Contract #2007-15. Verified Complaint ¶ 44.

26. On August 6, 2007, the Board placed on its agenda an item to terminate both contracts that Space Age had won. Leroy Wilson, Jr., Counsel for Space Age, after sending a packet of letters, including the exchange between Mr. Lynch and Space Age and Space Age and Alarms Specialists, appeared at the meeting with me.

27. Mr. Wilson had requested an opportunity to examine whatever documents that the Board was going to consider at its meeting to support Mr. Lynch's recommendation that the contracts be terminated and that he be given an opportunity to address the merits of the recommendation.

28. When Mr. Johnson and Mr. Wilson appeared, Mr. Seiler told Mr. Wilson, in my presence, that the item involving the termination of Space Age had been tabled[2]. Mr. Wilson requested an opportunity to speak to the Board to say two things; one, that he would like to be provided with whatever documentation Mr. Lynch was going to present to the Board to support its consideration of whether or not to terminate the contracts and two, to ask the Board to give

---

[2] Verified Complaint, Exhibit "1", agenda item VI, 3.

Space Age notice of when the adjourned meeting would take place so that he and I would have an opportunity to address the Board on the merits of the termination.

29.     The August 6, 2007 Board meeting was videotaped and Space Age has requested copy of the videotape of the meeting and especially the presentation by Mr. Wilson so that the Court may determine which version (Mr. Seiler's or mine) of what had happened at that meeting is accurate.

30.     The notice calling for the bids and the introduction to the fire alarm contract reads that Bid #2007-15 was for monitoring and maintenance of fire alarm systems. They say nothing about *installation*. Contrast Mr. Seiler's statement in paragraph 4 of his affidavit. The fire alarm notice and contract are part of Exhibit "A" to Mr. Seiler's affidavit. (Top of page 2, top of page 24).

31.     The notice calling for the bids and the introduction to the security alarm systems Contract #2007-16 says, "Monitoring and maintenance of security alarm systems." They say nothing about *installation*. See Seiler affidavit, paragraph 4. The security alarm system notice and contract are part of Exhibit "B" to Seiler's affidavit. (Top of page 5, top of page 25).

32.     Contrary to Mr. Seiler's statement to paragraph 5 of his affidavit that "the bid specifications require the contractor to provide new communications equipment for which plaintiff has refused to comply," the bid specifications for the fire alarm systems says, "13. <u>Use of Present Material</u>: Unless otherwise specified, it is the intention that new materials shall be furnished**, but if during the progress of work it is found that present materials are sound and of proper quality and dimensions, as required by the plans, details and specifications, the Contractor may use the same, provided they are acceptable to have first been approved by the Director of Facilities & Operations." Seiler Exhibit A, page 21.**

7

33. Significantly, the Agreement in Seiler's Exhibit "A" calls for the installation of FLOOR TILE, having nothing to do with a fire alarm system. Exhibit "A," at 15.

34. Defendant Alarm Specialists lockout of the codes in no way rendered the present installed materials unsound, not of proper quality or dimensions. The lockout rendered the sound, proper quality and proper dimensions of the present systems unusable to anyone other than Alarm Specialists.

35. Some fire alarm systems had an onboard built in communicator which would have required access in order to program the monitoring data in the systems.

36. Likewise, and contrary to Mr. Seiler's statement to paragraph 5 of his affidavit, the bid specifications for the security system contract also states, "13 <u>Use of Present Material</u>: Unless other specified, it is the intention that new materials shall be furnished, **but if during the progress of work it is found that present materials are sound and of proper quality and dimensions, as required by the plans, details and specifications, the Contractor may use the same, provided they are acceptable to and have first been approved by the Director of Facilities & Operations." Seiler Exhibit B, page 22.**

37. Neither of these contracts requires the use of "new communications equipment."

38. In my walk through, I saw no communicators that needed to be replaced.

39. A fair reading of the fire systems specifications (page 24, first item 2, and item 4. under the "Additional Conditions") contemplates that defective parts will be replaced if encountered.

40. The same is true for the security system. Seiler Exhibit "B" at 25 (Additional conditions # 5- "Any parts installed onto the system become [sic] the property of the school district – NO Exceptions.") and at 26 ("NOTE: No modifications to the system may be made by

Case 7:07-cv-07606-CS    Document 23    Filed 11/30/2007    Page 9 of 17

the successful bidder without prior approval of the director of facilities and Operations. Installed key pads/communicators are the property of the School District."). Also see Verified Complaint ¶ 35.

41. Mr. Seiler does not address who owns what.

42. Paragraph 8 of Mr. Seiler's affidavit is irrelevant. It would be more relevant if 4 or 5 of the 7 Board members were African-Americans. It might also be relevant to learn the break-down of the vote, and what information each of the Board members had in their possession before the vote.

43. Contrary to paragraph 9 of Mr. Seiler's affidavit that, "Since the contracts were awarded, Plaintiff failed to, indeed refused to, install the communication equipment as required. Instead, Plaintiff demanded to be allowed to use the old equipment," plaintiff asked for the access codes for both systems to see what could be used.

44. It stands to reason that when the old contractor, Alarm Specialists, lost the bid, both sets of these systems must have been operating. Therefore, whatever equipment was being used at that time must have been at least adequate, if not in excellent useable condition.

45. Contrary to paragraph 10 of Fred Seiler's affidavit, that "Plaintiff attended this meeting and had the opportunity to address the Board", plaintiff did not have the opportunity to address the Board on the merits of what Mr. Lynch had alleged. Indeed, plaintiff's appearance before the Board was simply *procedural* to ask for the opportunity to review whatever documentation Mr. Lynch was going to provide to the Board in support of his recommendation that they terminate both of these contracts and to ask to be notified of the date of the adjourned meeting where this matter would be taken from the table and considered so that Space Age could appear, be fairly hard, and defend itself and its reputation on the *merits*.

9

46. Contrary to paragraph 11 of Mr. Seiler's affidavit, that, "The failure to install the new equipment was a substantial breach of the contract because without the new equipment, plaintiff could not monitor the alarm system," the Board and Mr. Lynch's failure to provide the access codes made it impossible for Space Age to perform the security contracts and inadvisable and infeasible to perform the fire systems contract. It was not Space Age' failure but Lynch's and Seiler's failure along with Alarm Specialists lockout that made it impossible for Space Age to perform the contracts.

47. The Board never notified Space Age of the date of the adjourned meeting (if there was a meeting) where it would formally vote to terminate Space Age's contract.

48. I respectfully refer the Court to the Declaration of Leroy Wilson, Jr., submitted herewith for the reasons the Order to Show Cause was denied.

49. With reference to Mr. Seiler's paragraph 17 concerning the notice of claim, I understand from our counsel that no notice of claim was required for the federal claims, and that the Board had actual notice of the breach of contract by Mr. Lynch and the Board from the letters that it received from Space Age and it's counsel and because the verified complaint in this action is sufficient notice. See Space Age's Memorandum of Law being submitted herewith at **POINT I.**

50. The Board had ample opportunity to investigate Space Age's claim and did nothing.

**WHEREFORE**, the plaintiff Space Age respectfully prays that the motion to dismiss by the Board of Education of the White Plains City School District and Michael J. Lynch be denied in all respects.

_____
Claude Johnson

Sworn to before me this
30th day of November, 2007.

_____
Notary Public

LEROY WILSON, JR.
NOTARY PUBLIC
WESTCHESTER COUNTY, NY
#02WI4643346
MY COMMISSION EXPIRES 9/30/09

EXHIBIT "1"

Case 7:07-cv-07606-CS   Document 23   Filed 11/30/2007   Page 12 of 17

UNIQUE ID NUMBER
120000275842

DOS-1098 (Rev. 3/01)

State of New York
Department of State
**DIVISION OF LICENSING SERVICES**

PURSUANT TO THE PROVISIONS OF ARTICLE 6D OF THE GENERAL BUSINESS LAW AS IT RELATES TO THE BUSINESS OF INSTALLING, SERVICING, OR MAINTAINING SECURITY OR FIRE ALARM SYSTEMS.

SPACE AGE ALARMS INC
222 NORTH 5TH AVE
MT VERNON, NY 10550

HAS BEEN DULY LICENSED TO ENGAGE IN THE BUSINESS OF INSTALLING, SERVICING, OR MAINTAINING SECURITY OR FIRE ALARM SYSTEMS

QUALIFIER: RHODES RAMON C

In Witness Whereof, The Department of State has caused its official seal to be hereunto affixed.
CHRISTOPHER L. JACOBS
SECRETARY OF STATE

FOR OFFICE USE ONLY
Control No. 34568

EFFECTIVE DATE
MO. 12 | DAY 18 | YR. 05

EXPIRATION DATE
MO. 12 | DAY 17 | YR. 08

EXHIBIT "2"

 **Underwriters Laboratories Inc.** ®

Northbrook, IL   Santa Clara, CA
Melville, NY   Research Triangle Park, NC
Camas, WA

A not-for-profit organization dedicated to public safety and committed to quality service

Applicant ID No: **123506-001**
Service Center No  **0**
Expires:   **31-MAR-2008**

# CERTIFICATE OF COMPLIANCE

**THIS IS TO CERTIFY** that the Alarm Service Company indicated below is included by Underwriters Laboratories Inc. (UL) in its Product Directories as eligible to use the UL Listing Mark in connection with Certificated Alarm Systems. The only evidence of compliance with UL's requirements is the issuance of a UL Certificate for the Alarm System and the Certificate is current under UL's Certificate Verification Service.

Listed Service From: **MOUNT VERNON, NY**

Alarm Service Company: (123506-001)

SPACE AGE ALARMS INC
222 N 5TH AVE
MOUNT VERNON NY 10550

Service Center: (123506-001)

SPACE AGE ALARMS INC
222 N 5TH AVE
MOUNT VERNON NY 10550

The Alarm Service Company is Listed in the following Certificate Service Categories:

| File - Vol No. | CCN | Listing Category |
|---|---|---|
| BP8119 - 1 | CVSG | [Burglar Alarm Systems] Mercantile |

\*\*\*THIS CERTIFICATE EXPIRES ON 31-MAR-2008 \*\*\*

"LOOK FOR THE UL ALARM SYSTEM CERTIFICATE"

_signature_
Engineering Manager
28-FEB-2007

© 1998 UL   Form CS-CC

Wilson Jacobson, P.C.
The Inns of Court Building
99 Court Street
Suite 2
White Plains, New York 10601-4264
(914) 997-0825
FAX (914) 997-0825

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SPACE AGE ALARMS, INC., | File No. 07-CV-7606 (CLB)(MDF) |
| Plaintiff | ECF CASE |
| -against- | |
| THE BOARD OF EDUCATION OF THE WHITE PLAINS CITY SCHOOL DISTRICT, MICHAEL J. LYNCH AND ALARM SPECIALISTS, INC. | CERTIFICATE AND AFFIRMATION OF SERVICE |
| Defendants. | |

---

Leroy Wilson, Jr., Esq. of Wilson Jacobson, P.C. attorney for Plaintiff herein, duly admitted to practice law in the State of New York, hereby affirms under penalties of perjury and hereby certifies that on the date set forth below, she served the below described papers upon the below listed person(s) at the address (es) listed below by mailing to them a true copy of said papers by regular first class mail, postage prepaid, in a sealed envelope at a depository maintained by the U.S. Postal Service within the City of White Plains, New York.

Papers served:

1. JOHNSON AFFIDAVIT IN OPPOSITION TO THE BOARD AND LYNCH'S MOTION TO DISMISS

2. WILSON DECLARATION PURSUANT TO 28 U.S.C. §1746

3. PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BOARD OF EDUCATION OF THE WHITE PLAINS CITY SCHOOL DISTRICT AND MICHAEL J. LYNCH'S MOTION TO DISMISS

Persons served:

Michael G. McAlvin, Esq.
Ingerman Smith, LLP
Attorneys for Municipal Defendants
150 Motor Parkway
Suite 400
Hauppauge, New York 11788
1-631-261-8834

Hugh G. Jasne, Esq.
Jasne & Florio, L.L.P.
Attorneys for Defendant Alarm Specialists, Inc.
525 North Broadway
White Plains, NY 10603
1-914-997-1212

Date Mailed: November 30, 2007
Dated:    November 30, 2007

_____
Leroy Wilson, Jr.

2