UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPACE AGE ALARMS, INC.,

Plaintiff,

– against –

THE BOARD OF EDUCATION OF THE WHITE
PLAINS CITY SCHOOL DISTRICT, MICHAEL J.
LYNCH AND ALARM SPECIALISTS, INC.

Defendants.

---

Case No.:

07-CV-7606 (CLB)(MDF)

AFFIRMATION OF
MICHAEL G. McALVIN
IN OPPOSITION TO
PLAINTIFF'S RULE 60
MOTION

---

**MICHAEL G. McALVIN**, an attorney duly licensed to practice law before the courts of this state and district, affirms the following under penalty of perjury:

1.      I am associated with the firm of Ingerman Smith, LLP, attorneys for the Defendants, the Board of Education of the White Plains City School District and Michael J. Lynch (hereinafter collectively the "School District"). I am personally familiar with the facts and circumstances underlying the within action from my review of the books and records of the School District and from numerous conferences with school officials.

2.      I respectfully submit this affirmation in opposition to Plaintiff's, Space Age Alarms, Inc., Motion for Relief from Judgment made pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure and for the purposes of reservation of rights.

3.      On October 26, 2007, the School District and Mr. Lynch filed a Rule 12 Motion to Dismiss Plaintiff's Verified Complaint on the grounds that: (1) Plaintiff failed to comply with the Notice of Claim requirements of Section 3218 of the New York State Education Law; (2) Plaintiff failed to state a claim upon which relief can be granted; and (3) in the event the federal claims were dismissed and any state law claims remained, it was requested that the Court should decline to exercise jurisdiction of those state law claims. A copy of Plaintiff's August 27, 2007, Verified Complaint is annexed hereto as Exhibit A.

4.      After the parties' respective papers were submitted, oral argument on the Motion was held before the Honorable Judge Charles L. Brieant on December 14, 2007. A copy of the transcript is annexed hereto as Exhibit B. At the conclusion of argument, the Court reserved decision.

5.      Thereafter, on March 11, 2008, Judge Brieant issued a Memorandum and Order in which he dismissed Plaintiff's claims and ordered the Clerk of the Court to file a final judgment. A copy of the March 11, 2008, Memorandum and Order is annexed hereto as Exhibit C.

6.      On March 13, 2008, the Clerk of the Court filed final judgment dismissing Plaintiff's Verified Complaint as against all the defendants. See Plaintiff's Exhibit 2.

7.      Subsequently, Plaintiff filed its Notice of Appeal on April 9, 2008. A Pre-Argument Conference was held at the Court of Appeals where the attorneys met with Stanley Bass, a Staff Attorney for the Court of Appeals, to

discuss legal issues involved in the appeal.  One such issue dealt with statements made by Judge Brieant during oral argument on the Motion to Dismiss regarding amendment to Plaintiff's Verified Complaint.

8.    Subsequent to the conference, the District Court indicated a willingness to grant Plaintiff leave to file the instant Rule 60 Motion should the case be returned to the District Court.  Thus, in the interest of economy, the parties agreed to return the case to the District Court for the purpose of Plaintiff filing a Rule 60 Motion.  <u>See</u> Plaintiff Exhibit 1.  After the case was returned to the District Court, Judge Brieant ordered that Plaintiff file its Rule 60 Motion by July 21, 2008.

**WHEREFORE,** pursuant to the argument set forth in the Memorandum of Law by the School District, Plaintiff's Rule 60 Motion should be denied as the Memorandum and Order and the Judgment were the decision of the Court.  It is respectfully requested that the Court issue an order denying Plaintiff's Rule 60 Motion and issue an order stating that, if the court intended to allow for the amendment of the pleadings, it would have done so in its order.  Respectfully, if the Rule 60 Motion is granted and a Rule 15 Motion is ultimately filed, the Defendants should be granted to right file objection to such a motion if it is deemed necessary.

Dated:       Hauppauge, New York
             July 25, 2008

                              BY:      _____
                                       Michael G. McAlvin (MM-6074)
                                       INGERMAN SMITH, LLP
                                       Attorneys for Defendants
                                       WHITE PLAINS CITY
                                       SCHOOL DISTRICT and
                                       MICHAEL LYNCH
                                       150 Motor Parkway, Suite 400
                                       Hauppauge, New York 11788
                                       (631) 261-8834

To:

Leroy Wilson, Jr., Esq.
Wilson Jacobson, P.C.
Attorneys for Plaintiff
SPACE AGE ALARMS, INC.
The Inns of Court Building
99 Court Street, Suite 2
White Plains, New York 10601
(914) 997-0825
Fax: (914) 994-0830

Hugh G. Jasne, Esq.
Jasne & Florio, L.L.P.
Attorneys for Defendant
ALARM SPECIALISTS, INC.
525 North Broadway
White Plains, New York 10603
(914) 997-1212
Fax: (914) 682-8692



Wilson Jacobson. P.C.
The Inns of Court Building
99 Court Street
Suite 2
White Plains, New York 10601-4264
(914) 997-0825
FAX (914) 997-0830

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



SPACE AGE ALARMS, INC.,

        Plaintiff

       -against-

THE BOARD OF EDUCATION OF THE WHITE
PLAINS CITY SCHOOL DISTRICT , MICHAEL
J. LYNCH AND ALARM SPECIALISTS, INC.

      Defendants.

File No.

ECF CASE

**VERIFIED    COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

### PRELIMINARY STATEMENT

    This is a civil action, brought under 42 U.S.C. § 1981, and 42 U.S.C §1983, 42 U.S.C

§1331 and 42 U.S.C §§ 1343(a)(1), (a)(3) and (a)(4) and under 28 U.S.C. § § 2201 and 2202

seeking damages, injunctive and declaratory relief against the Defendants Board of Education of

the White Plains City School District and Michael J. Lynch for committing intentional acts

against the Plaintiff because of the race of its owners and for committing intentional acts against

the Plaintiff under color of state law, which deprived the Plaintiff of Federal Civil Rights,

including those rights to freedom of speech and to petition the government secured by the First

Amendment and the right to equal protection and to procedural and substantive due process secured by the Fourteenth Amendment to the United States Constitution.

Plaintiff also seeks damages and injunctive relief against the Defendant Alarm Specialists, Inc. under state law and to the extent that it has assisted or participated with the Defendant Board of Education to deprive Plaintiff of its federally guaranteed rights, appropriate relief under federal law.

Plaintiff also invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims arising from the same facts and circumstances as the claims arising under federal law, and form part of a single case or controversy to redress the injuries Plaintiff has suffered, continues to suffer and will suffer under Article 1, § 9 of the New York Constitution to remedy Plaintiff's right to redress its grievances; under Article 1, Sections 1 and 11 of the New York State Constitution and New York Executive Law § 296[13] to remedy violations of Plaintiff's rights to equal protection; under Education Law 2513 to vindicate public policy, and under New York common law for breach of contract, and tortious interference with contracts or business relationships.

## JURISDICTION AND VENUE

1.      The Court's jurisdiction is invoked pursuant to the provisions of 28 U.S.C. §§ 1331, 42 U.S.C §§ 1343(a) (1), (a) (3) and (a) (4), and 42 U.S.C § 1367 (a), providing jurisdiction for a federal question, for protection of civil rights, and for supplemental jurisdiction, respectively.

2.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c), as the Defendant Board of Education of the White Plains City School District resides in the Southern District of New York and the claims arose in this judicial district.

PARTIES

3.    Plaintiff Space Age Alarms, Inc. ("Space Age") is a corporation duly organized and existing under the laws of the State of New York. It was the winning bidder.

4.    Defendant Board of Education of the White Plains City School District (the "Board") is a body corporate under the laws of the State of New York. The Board consists of seven elected members. It has the overall responsibility for management and control of the properties that the Board uses in the school district.

5.    Defendant Michael J. Lynch (Mr. Lynch") is the Director of School Facilities and Operations for the City School District of the City of White Plains, New York.

6.    Defendant Alarm Specialists, Inc., ("Alarm Specialists") is a corporation organized and exists under the laws of the State of New York. It was the losing bidder.

BACKGROUND FACTS

7.    Pursuant to the advertisement for bids dated 2:00 P.M. FRIDAY, May 18, 2007, Space Age submitted a bid on Bid #2006-15 and Bid #2007-16, to provide monitoring & maintenance of fire alarm systems and security alarm systems respectively.

8.    On or about June 4, 2007, Space Age wrote a letter to Mr. Michael J. Lynch, Director School Facilities and Operations for the Board ("Mr. Lynch") saying:

> During our walk-thru at the Church Street and George Washington's Schools you indicated that existing Burglary Alarm Panel (Ademco/Honeywell) Access Control Devices and Fire Alarm Panel/Communicators Ademco/Honeywell and Silent Knight) including all burglary and fire alarm component devices is and remains the property of the school district. As for the newly installed keypad at some schools by the current security company, I am somewhat confused, unless the old keypad belonging to the district was in need of replacement and was authorize[d] being replaced by the district, then it seems this matter can be resolved through direct precise communication.

In any event, we will need **access codes** for each burglar, fire, access control system with telephone numbers, in order that we input our monitoring data. The existing systems operation program and user code should remain."
(Emphasis added)

9.    On or about June 6, 2007 Lynch responded to Space Age that:

Your fax letter, dated June 4, 2007, would seem to indicate you seem to believe there is some verbal understanding, separate from the bid documents regarding the required performance of Space Age Alarms. Please be advised of the following:

The bid documents clearly state in the monitoring and maintenance of security alarm systems and fire alarm systems, the bidder shall provide new keypad and communicator devices including the radio backup.

10.    Contrary to Mr. Lynch's letter, this statement does not appear in the Bid 2007-15 covering the fire alarm systems.

11.    Mr. Lynch continues in his June 6, 2007 letter:

I am sure you know from your required site visits, some schools have multiple independent security systems, some schools have integrated access systems and some have independent access systems. Some schools have Edwards fire panels, others have Honeywell fire panels and our high school has a Siemen's fire panel. In all cases, you are required to maintain the hardware and software for all these systems, including our emergency telephones and elevators and freezer alarms. The security contract is inclusive of all programming changes, including adding, modifying or deleting *user codes* and key fobs. The bid documents clearly specify, that the bidder must supply all labor, materials and parts to monitor and maintain these systems, no exceptions other than those listed. I have no agreement, written or verbal with any of our current vendors to require hardware or software support for other vendors.

I believe the White Plains *Building Department* requires permits for the installation and replacement of fire communication equipment, if so, please obtain them. Can you please forward to me *certification* that your technicians are factory authorized for maintaining these different fire control panels?"
(Emphasis added)

4

12.    Mr. Lynch's response did not address Space Age's need for the access codes.

13.    Mr. Lynch referred to the Building Department and not the Fire Department which is the appropriate agency.

14.    Mr. Lynch also seeks to impose a certification requirement on Space Age which is not contained in the bid documents. Nor is there any reference in the contract documents that require Space Age to provide Mr. Lynch with "...*certification* that your technicians are factory authorized for maintaining these different fire control panels" (Emphasis Added)

15.    On or about June 18, 2007 Lynch notified Space Age that the Board had approved a contract to Space Age pursuant to bid number 2006 [sic] -15: MONITORING AND MAINTENANCE OF FIRE ALARM SYSTEMS at its June 11, 2007 board meeting.

16.    Also on or about June 18, 2007 Lynch notified Space Age that the Board had approved a contract to Space Age pursuant to bid number 2007-16: MONITOR AND MAINTENANCE OF SECURITY ALARM SYSTEMS at its June 11, 2007 board meeting.

17.    Paragraph 11 of the General conditions of each Contract provide that all work to be performed under the contract will be done under the direction, supervision and inspection of the Director of Facilities & Operations or his designees, i.e. Mr. Lynch.

18.    On or about June 20, 2007 Space Age responded to Mr. Lynch saying, among other things, the following:

> As stated previously, we will need **access codes** to those systems
> belonging to the school district in order for us to input our monitoring

data. Thereafter all necessary programming changes such as adding or deleting user codes and key jobs [sic] would be no problem. As a security company we are New York state license to install, service or maintain security and fire alarm systems."
We are also one of the very few in Westchester County, UL certified installation security company that maintain trained personnel.
As a New York State license UL certified company federal, state and local code compliances must be followed at all times."(Emphasis added)

19.    On or about July 7, 2007 Space Age wrote to Mr. Lynch again saying that

it would like to input its monitoring data into the existing burglary and fire alarm school

district account.

20.    In the July 7, 2007 letter Space Age Alarms stated:

Please provide us the following information for each site:
1.    Premise phone numbers.
2.    Premise code or password.
3.    Contract call list order with name and telephone and flash and/or cell phone numbers.
4.    Any special instructions or requests you may have."

21.    On or about July 12, 2007 Space Age Alarms wrote Mr. Lynch again

saying that it had not received the information that it requested in its letter dated July 7,

2007.

22.    Space Age's July 12, 2007 letter stated further:

As you may recall in my letter dated June 4, 2007 in order for this transition process to be implemented we would need necessary access to reprogram our data in all the district security systems.
On Wednesday, July 7, 2007 around 8:30 to 9:00 a.m. I call alarm specialists on behalf of the school district regarding this issue. In speaking to Stephanie and in sharing my purpose of calling she did say that most recently that Gary one of the company's principals had requested that she program lockout access to all of the district security systems."

23.    On or about July 13, 2007 Phyllis Paul of the White Plains City School District faxed to Space Age a document which said: "As requested. Attached is a copy of the security codes."

24.    In fact this was not a copy of the security codes, they were **user codes.**

25.    On or about July 19, 2007 Mr. Lynch wrote to Space Age Alarm with respect to the fire alarm and security alarm contracts:

> Dear Mr. Johnson:
> In response to the fact that you have not switched over the communicators to your company, we find you in default of the monitoring contract for the burglar and fire alarm systems. We are recommending at the August 6 school board meeting that the contract with your firm be terminated.
> We also wish to inform you that due to a bid error on our part we will be re-bidding the *maintenance* portion of the burglar and alarm systems.

26.    Without the **access codes** Space Age cannot communicate with the installed systems.

27.    Additionally, Mr. Lynch does not spell out what the error is.

28.    In addition, by limiting the new bid to *maintenance* Mr. Lynch suggests that the district is going to continue to use the hardware that is in place. A reasonable inference would be that the Board intends to continue to use the old contractor, Alarm Systems.

29.    On or about July 19, 2007 Space Age wrote to Mr. Gary Davis, Vice President of Alarm Specialists, with respect to the White Plains School District security systems. Alarm Specialists had been the prior fire alarm and security monitoring and maintenance contractor for 11 years. Plaintiff displaced Alarm Specialists.

30.     Space Age wrote:

Dear Mr. Davis:
Since we are experiencing difficult connecting via telephone, on behalf of the White Plains School District as its newly approved security company, I am requesting that you <u>DISABLE</u> the most recently programmed local access lockout from all of the district security (burglar and fire alarm communicator) systems. The access lockout have been verified by our attempt to access programs and by Stephanie of your office during telephone call to you on July 11, 2007.
Thanks so very much in addressing this issue and would you kindly advise the district or us in order that we may begin the transitional process of programming our monitoring data within the various systems.

31.     On or about July 24, 2007 Space Age wrote a letter to the individual Board members transmitting Mr. Lynch's July 19, 2007 letter and also letter dated July 24, 2007 which was a reply from Alarm Specialists dated July 24, which was in response to Space Age's letter to them dated July 19, 2007.

32.     In the July 24, 2007 letter Space Age stated to the Board members:

In order that we implement the service we are contracted to perform its required that we have access capability to all of the district's security systems. <u>Local access lockout must be disable</u>.


Should the district encounter problem in having the local lockout disabled by current security company, then it may very well be necessary to swap out the current system's control panels/keypads with new compatible ones at an additional cost to the district. In any event we will assist and do whatever's necessary in maintaining the district's security service.

33.     The letter that Space Age referred to is a July 24, 2007 letter from Alarm Specialists and it read as follows:

The security control panels, fire communicator panels, and radio communicators along with a select number of control pads were supplied, installed and programmed at our expense. Therefore as indicated in the

8

bid documents, this equipment, including the software for these systems are the property of Alarm Specialists, Inc.

The White Plains Fire Department is currently aware of the change in fire communication equipment and is now waiting for the appropriate paperwork 'regarding [?]' your equipment. I have instructed my office to invoice the district for the month of July and August (required notice cancellation has expired). Please let me know if there is any other information that you require.

34.    Mr. Davis did not point to any specific provision in the bid documents which gave ownership rights in the foregoing equipment including the software for those systems as being the property of Alarm Specialists.

35.    In direct contradiction to what Alarms specialists wrote, Bid #2007-15 says on page 24:

NOTE: No modifications to the system may be made by the successful bidder without prior approval of the director of facilities and Operations. Installed key pads/communicators are the property of the School District.

36.    The Board and its counsel have thus far refused to answer the question of who owns what, even though this question has been put to them in writing.

37.    Space Age has no documents to show that alarms Specialists own any of this property.

38.    The Board has also refused to assist Space Age in securing the access codes and making this transition which is customary in contracts of this type.

39.    On July 25, 2007 Space Age wrote a letter to Mr. Davis [at Alarm Specialists] which pointed out that bid number 2007-16 stated:

Bid number 2007-16 Monitoring and Maintenance of Security Alarm Systems the beginning paragraph page number 25.

1.    It is the intention of this specification to include all labor, material and equipment to provide a one-year maintenance contract for the security alarm systems located in various school district sites.

2.    Last paragraph, page number 26. Note no modifications to the system may be made by the successful bidder without prior approval of the Director of Facilities and Operations. *Installed keypad/communicators are the property school district.

40.    The letter concludes with a query of Mr. Davis asking if Defendant Lynch was saying that before Alarm Specialists began servicing the district there were no existing security panels or keypads.

41.    Space Age copied the board members and Mr. Lynch on the July 25, 2007 letter to Mr. Davis.

42.    Space Age never received a response to this or to any of its other letters from the Board.

43.    On July 30, 2007 Mr. Davis wrote a letter to Space Age saying:

Dear Mr. Johnson,
Please let me clarify, my letter was not a comparison of previous contracts to this one. The bid documents have stated that the vendor needed to provide the communicator devices, including radio backup. Either way I am not going to debate this issue any further.
Best regards, Gary Davis, Vice President.

44.    On July 31, 2007 Space Age wrote a letter to Lynch, which stated, in part:

Mr. Lynch,

You as Director of School Facilities and Operations have done very little in assisting us through the transition process of removing access lockout from the various security alarm systems of bid number 2007-16.
Until you or the members advise us that the local lockout have been disabled or advise us to swap out the current security alarm system/keypads per my letter dated July 24, 2007, we cannot provide any service nor will we begin the installation of new radio backup systems or digital communicators for monitoring the existing fire alarm systems per bid number 2007-15.

45.    On August 6, 2007 the Board had placed on its agenda Item VI. – 3.

"3.    Recommended approval to terminate the bid award to Space Age Alarms." A copy of the Agenda is annexed hereto as Exhibit "1".

46.    On August 6, 2007 Space Age's counsel faxed and sent a letter by email to Michele Schoenfeld, the Clerk of the Board, requesting an opportunity to speak in opposition to this action. He also requested a copy of the documents that the Board's presenter would use to support his recommendation that the bid award be terminated. A copy of Wilson letter to Schoenfeld dated August 6, 2007 is annexed hereto as Exhibit "2".

47.    The Clerk did not respond.

48.    Plaintiff's counsel appeared at the August Board meeting, and before the meeting, gave the Clerk a copy of a letter addressed to the Board members dated August 6, 2007 with enclosures to give to each of the Board members. A copy of Wilson letter to the Board members dated August 6, 2007 (without exhibits) is annexed hereto as Exhibit "3".

49.    Before the Board meeting Mr. Fred Seiler, who upon information and belief, is the Assistant Superintendent for Business for the District, told Plaintiff's counsel that he wanted to work things out but that he had not been able to contact the District's counsel.

50.    At that time, Mr. Seiler told Plaintiff's counsel that the item concerning the termination of the Space Age bids would be tabled.

51.    In his statement before the Board Plaintiff's counsel told the members that he understood that the matter would be tabled, again requested of the Board the

11

documents upon which they were going to make a decision, asked to be informed of the adjourned date for the consideration of this item, and asked them to read and review the documents that he had included in the package for each of them that he had delivered to the Clerk.

52.    After his appearance, Board member Conner told Plaintiff's counsel that the matter had been tabled. Plaintiff's counsel later received a letter form Defendant Board's counsel that the matter had been tabled.

53.    Within 2 days after that meeting, to wit, on August 8 and August 9th, the Journal News, which covers White Plains, published legal notices re-advertising a "Notice to Contractors" requesting bids for the services to provide monitoring & maintenance of fire alarm systems and security alarm systems for the school district. A copy of each of these notices is annexed hereto as Exhibit "4".

54.    The notices provide that the bids would "be received by the Board of Education of the City of White Plains, New York at the office of the Board of Education, 5 Homeside Lane, White Plains, New York until 2:00 PM, Friday, August 24, 2007 at which time and place the proposals will be publicly opened and read."

55.    These notices were placed by Mr. Lynch.

56.    Upon information and belief, the notices, these bids, contracts and specifications were prepared and placed pursuant to Education Law § 2513.

57.    The Board members knew or should have known or had notice of these publications.

58.    On August 10, 2007, Plaintiff's counsel again wrote a letter to Ms. Schoenfeld, the Clerk of the Board, asking for an explanation of the reason for the notices

in light of the fact that the Board had tabled its action on whether or not Space Age's

contracts for the same services should be terminated. A copy of the August 10, 2007

letter from Wilson to Schoenfeld is annexed hereto as Exhibit "5".

59.    Plaintiff's counsel received no response.

60.    On August 21, 2007 Mr. Lynch faxed an Addendum to Space Age Alarms

to the new bids. Defendant Lynch had not provided Space Age with the documents that

the addenda were to replace. A copy of these Addenda is annexed hereto as "6".

61.    Space Age concluded that Mr. Lynch was the policymaker for the district

on this issue as he was ignoring the Board.

62.    African- Americans own the majority, if not all, of the issued and

outstanding stock of Space Age.

63.    Upon information and belief, Caucasians own the majority, if not all, of

the issued and outstanding stock of Alarm Specialists.

64.    Plaintiff has no adequate remedy under state law.

### COUNT I

(Violation of Plaintiff's Due Process Rights Under the 14th Amendment to the United States
Constitution: 42 U.S.C. §1983)
(Against the Board and Mr. Lynch)

65.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 64

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

66.    Mr. Lynch has terminated Space Age's contracts with the apparent acquiescence

adoption and sanction of the Board.

67.    Under the circumstances set forth above, Mr. Lynch's acts or edicts fairly represent the official policy of the Board.

68.    Mr. Lynch is the Board's final policy maker with respect to this termination.

69.    Mr. Lynch's refusal to supply Space Age with the access codes and additional information that it needs in order to perform the contract deprives it of the opportunity to perform the contract.

70.    Mr. Lynch's conduct and the Board's acquiescence, adoption and sanction of Mr. Lynch's practices deprive Space Age of valuable contract property rights without substantive due process of law.

71.    The refusal of the Board to provide Space Age with the opportunity to confront Mr. Lynch in an adversarial hearing before the Board deprives Space Age of procedural due process of law.

72.    The refusal of the Board to provide Space Age with the specific documents and testimony that the Board intended to rely upon to consider the recommendation to terminate these contracts deprives Space Age of procedural due process of law.

73.    The refusal of the Board to provide Space Age with the opportunity of a fair hearing to persuade the Board that it did not breach the contracts deprives Space Age of procedural due process of law.

74.    Mr. Lynch and the Board deprived the Plaintiff of its due process rights while acting under color of state law.

<u>COUNT II</u>

(Violation of Plaintiff's First Amendment Rights Under the First Amendment to the United
States Constitution: 42 U.S.C. §1983)
(Against the Board and Mr. Lynch)

75.     Plaintiff realleges each of the allegations set forth in paragraphs 1 through 74

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

76.     Plaintiff left the August 6, 2007 meeting thinking that it would receive a fair

opportunity for a hearing at an adjourned meeting.

77.     The failure of the Board to stop Defendant Lynch from publishing the notices a

mere 2 days after Plaintiff's counsel appeared before the Board to redress Plaintiff's grievances

was in retaliation for that appearance.

78.     Defendants Board and Lynch's decision to publish these notices after the board

had told Plaintiff's counsel, in the presence of Plaintiff's Chief executive Officer, who was in

the audience at the August 6, 2007 meeting was designed to (1) single out Plaintiff for selective,

injurious treatment in retaliation for its exercise of its First Amendment rights, or (2) with a

malicious or bad faith intent to injure Plaintiff.

79.     Mr. Lynch and the Board deprived the Plaintiff of its First Amendment right to

petition the government for the redress of its grievances while acting under color of state law.

## COUNT III

(Violation of Plaintiff's Under 42 U.S.C. §1981)
(Against the Board and Mr. Lynch)

80.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 79

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

42 U.S.C. §1981 provides:

§ 1981.  Equal rights under the law

(a) Statement of equal rights. All persons within the jurisdiction of the United States
shall have the same right in every State and Territory to make and enforce contracts,
... as is enjoyed by white citizens, and shall be subject to like punishment, pains,
penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term
"make and enforce contracts" includes the making, performance, modification, and
termination of contracts, and the enjoyment of all benefits, privileges, terms, and
conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected
against impairment by nongovernmental discrimination and impairment under color
of State law.

81.    Defendant Board and Defendant Lynch intentionally did not give Space Age the

same rights that it gave Alarm Specialists in making and enforcing contracts because Space Age

is owned by black people and Alarms Specialists is owned by white people.

82.    The conduct of Defendant Board and Defendant Lynch violated Plaintiff's rights

under 42 U.S.C. §1981.

## COUNT IV

(Violation of Plaintiff's Rights Under the Article 1, Section 9 of the New York State Constitution
(Against the Board and Mr. Lynch)

83.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 82

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

84.    The forgoing conduct of Defendant Board and Defendant Lynch violate

Plaintiff's rights to petition the government under New York Constitution , Article 1, §9.

## COUNT V

(Violation of Plaintiff's Rights Under the Article 1, Sections 1 and 11 of the New York State
Constitution and New York Executive Law § 296[13] (Against the Board and Mr. Lynch)

85.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 82

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

86.    Article 1, Section 1 of the New York State Constitution provides:

§ 1. [Rights, privileges and franchise secured]

No member of this state shall be disfranchised, or deprived of any of the rights or
privileges secured to any citizen thereof, unless by the law of the land ...
Article 1, Section 11 of the New York State constitution provides:

§ 11. [Equal protection of laws; discrimination in civil rights prohibited]
No person shall be denied the equal protection of the laws of this state or any
subdivision thereof. No person shall, because of race, color, creed or religion, be
subjected to any discrimination in his or her civil rights by any other person or by
any firm, corporation, or institution, or by the state or any agency or subdivision of
the state.

17

87.    The forgoing conduct of Defendant Board and Defendant Lynch violate

Plaintiff's rights to equal protection under New York Constitution, Article 1, Sections 1 and 11

and New York Executive Law § 296[13].

## COUNT VI

(Violation of Plaintiff's Rights Under New York State Education Law § 2513
(Against the Board and Mr. Lynch)

88.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 87

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

89.    Education Law § 2513 provides :

The board of education shall let all contracts for public work and all purchase
contracts to the lowest responsible bidder after advertisement for bids where so
required by section one hundred three of the general municipal law.

90.    The preparation of specifications, advertising of bids and awarding contracts for

a public project pursuant to Education Law § 2513 is a matter of acknowledged public interest.

91.    Where Plaintiff's contract rights have been violated as set forth above, then

pursuant to the public policy that underlies this section, contracts let in contravention of the

policy must be annulled.

## COUNT VII

(Breach of Contract)
(Against the Board and Mr. Lynch)

92.    Plaintiff realleges each of the allegations set forth in paragraphs 1 through 91

above as though specifically restated here, and for a count against the Defendant Board and

Defendant Lynch, alleges that:

93.     Plaintiff was awarded the fire alarm and security alarms systems contracts by the Board.

94.     The person who was responsible for the administration of the contracts on the Board's behalf was Defendant Lynch.

95.     The Defendants Board and Lynch did nothing to assist Plaintiff in securing the access codes from the Board or its prior contractor Alarm Specialists.

96.     The Defendant Board and the Defendant Lynch knew that Plaintiff could not perform its contracts on behalf of the Board unless it received these access codes.

97.     Having prevented the performance of the contracts, Defendant Lynch then advised the Plaintiff that its contracts were terminated.

98.     As a result of this termination Plaintiff has suffered pecuniary and reputational injury.

## COUNT VIII

(Tortious Interference With Contract Relations)
(Against Alarm Specialists)

99.     Plaintiff realleges each of the allegations set forth in paragraphs 1 through 45 above as though specifically restated here, and for a count against the Defendant Board and Defendant Lynch, alleges that:

100.    Alarm Specialists intentionally and improperly interfered with the Plaintiff's performance of the contracts by asserting ownership interests in the Board's fire and security alarms systems.

101.    Alarm Specialists intentionally and improperly interfered with the Plaintiff's performance of the contracts by withholding the access code information from the Plaintiff which prevented the Plaintiff from accessing the systems so that it could perform its contracts.

102.    By withholding the access codes Alarm Specialist did not act in conformity with the usages and customs of the trade.

103.    As a result of this interference Defendant Lynch terminated the Plaintiff's contracts.

104.    As a further result of this interference and Alarm Specialists withholding the access codes, the Defendant Lynch asserted a claim against the plaintiff for $3,471.80 for food that spoiled as a result of a freezer outage when Plaintiff had no control over the alarms systems.

105.    As a result of Alarm Specialists interference, Plaintiff has suffered pecuniary and reputational injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays this Honorable Court:

1)  declare that the Defendants Board and Lynch have violated Plaintiff's rights to procedural due process under the Federal and New York State Constitutions as set forth above ;

2)  declare that the Defendants Board and Lynch have violated Plaintiff's rights to substantive due process  under the Federal and New York State Constitutions as set forth above;

3)  declare that the Defendants Board and Lynch have retaliated against the Plaintiff and violated its rights to petition the government for the redress of its grievances under the Federal and New York State Constitutions as set forth above;

4)  declare that the Defendants Board and Lynch have violated Plaintiff's rights to the equal protection of the laws because of the race of its owners under the 42 U.S.C. Section 1981 and under the Federal and New York State Constitutions as set forth above;

5)  declare that the Defendants Board and Lynch have violated Plaintiff's rights to the equal protection of the laws because of the race of its owners under the New York State Executive Law § 296[13].

6)  order injunctive relief by annulling any bid awards that the Defendant Board and Defendant Lynch might have granted on August 24, 2007 under Bid #2007-23 and Bid #2007-24 pursuant to the August 8 and August 9, 2007 legal notices;

7)  order injunctive relief by enjoining and restraining the Defendant Board, Defendant Lynch or anyone acting on their behalf from performing any work under any contracts that it might have let under Bid #2007-23 and Bid #2007-24;

8)  order injunctive relief against Alarm Specialists ordering it to turn over the access codes and related information that Space Age Alarms needs to complete its contract the termination of which the Board never approved;

9)  award compensatory damages to Plaintiff, against the respective Defendants, and each of them, under each Count above in an amount commensurate with losses suffered

10) award attorney's fees and costs of this action; and

11) grant all other just and proper relief.

Claude Johnson

Dated: White Plains, NY
        August 26, 2007

STATE OF NEW YORK
COUNTY OF WESTCHESTER   ss.

CLAUDE JOHNSON, being duly sworn, deposes and says he is the President of Space Age
Alarms, Inc. the above named Plaintiff, which is a corporation created under, and by virtue of
the laws of the State of New York; he has read the foregoing complaint and the same is true to
the knowledge of the deponent except as to the matters therein stated to be alleged on
information and belief, and as to those matters he believes it to be true.


_____
CLAUDE JOHNSON

Sworn to before me this 26th day
Of August 2007

_____
NOTARY PUBLIC

LEROY WILSON, JR.
NOTARY PUBLIC - STATE OF NEW YORK
NO. 02WI4843346
QUALIFIED IN WESTCHESTER COUNTY
MY COMMISSION EXPIRES SEPT. 30, 20_09


WILSON JACOBSON, P.C

By: _____
Leroy Wilson, Jr., President
Attorney for Plaintiff
President
(Bar Code No. LWJr 2473)
The Inns of Court Building
Suite 2
White Plains, NY 10601-4264
(914) 997-0825
Fax (914) 994-0830

(Of Counsel, Roni L. Jacobson, Esq.,
Bar Code No. RJ 9691)

22

WHITE PLAINS CITY SCHOOL DISTRICT
White Plains, New York

REGULAR BOARD OF EDUCATION MEETING
Monday, August 6, 2007

Education House
7 P.M.
(Executive Session, 7-7:30 P.M.)

AGENDA

I.    Opening of Meeting:

      Pledge of Allegiance
      Moment of silence in memory of former staff members Norma Fish, Eleanor Junghans and Adrienne
            Mazziotta
      Oral Announcements by the Board President and Board Members

II.    Communications:

III.    Public Participation:  (The Board will entertain comments from the public on any issue, with a time
        limit of three minutes per person, and a maximum total of 25 minutes.)

IV.    Superintendent's Report:

V.    Summary Action Items:

      1.    Recommended approval of minutes of the Reorganization and Regular Meetings of July 9,
            2007.

      2.    Recommended approval of the adoption of the following textbook:
            Algebra 1, Holt, Rinehart and Winston, 2008, for 8th and 9th grade Algebra classes

      3.    Recommended approval to arrange for the appropriate program and services for students with
            disabilities, as recommended by the Committee on Special Education: 103 case numbers, as
            per attachment

      4.    Recommended approval to arrange for the appropriate program and services for students with
            disabilities, as recommended by the Committee on Preschool Special Education: 30 case
            numbers, as per attachment.

- 2 -

5.      Recommended approval to designate Carol Wagner as Petty Cashier for the EPE Grant for the 2007-08 School Year.

6.      Recommended approval of consultant contracts with the following:
          Helene Alalouf, for $42,800, for professional development
          George Hagans Consulting, not to exceed $60,030, for Superintendent's Hearings and
              community liaison
          Holistic Learning Center/Susan Versames Young, in the amount of $83,750, for ABA
              Services, as mandated by student IEPs
          April Blacker, in the amount of $7,423.40, for speech/language services, as mandated
              by student IEPs
          HTA of New York, Inc., for an amount not to exceed $43,000, for parent training and
              ABA services, as mandated by student IEPs
          Etoile LeBlanc, in the amount of $17,099, for speech/language services, as mandated by
              student IEPs
          Kathleen Perrago, increase of $1,230 for a total of $7,000, for evaluations and
              consultations, as mandated by student IEPs

7.      Recommended approval that all employees previously granted a conditional appointment and who have not received conditional clearance from the State Education Department be granted another conditional appointment for 20 days.

*Civil Service Staffing:*

8.      Recommended acceptance of the resignation of Patti Robbins, Registered Nurse, Ridgeway School, effective 7/20/07.

9.      Recommended approval of compensation for the following, as per attachments:
          2007-08 Summer Clerical work
          2007-08 Food Service

10.     Recommended approval of the appointments as per Board approved "Substitute, Summer School and Supplemental Rates":
          Student Worker (College)                    Tristan Seeney

11.     Recommended approval of the probationary appointment of Carlos Diez Canseco,* Custodial Worker, High School, 8 hours per day, effective 8/13/07 (replacing F. Rattenni).

*Teacher Staffing*

12.     Recommended approval of the appointment to tenure for the following Teaching Assistants:
          Jaime Guglielmo, Church Street School, effective 10/25/07
          Scott Milliken, Middle School-Highlands, effective 9/12/07
          Natasha Viczian, Middle School-Highlands, effective 10/25/07

13.     Recommended approval of the reappointment of Carlos Agudelo, Teaching Assistant, Alternative & Supplemental Programs, effective 8/31/07 (6.5 hours/day).

- 3 -

14.     Recommended acceptance of the resignations of the following Teaching Assistants:
        Katherine Calabro, George Washington School, effective 8/31/07
        Deborah Dorrity-Varco, Middle School-Eastview, effective 6/30/07
        Carlene Ince, Church Street School, effective 8/31/07
        Pasquale Palumbo, High School, effective 8/31/07
        Frances Posada, George Washington School, effective 8/31/07

15.     Recommended approval of the appointment of district-wide substitute Teaching Assistants, as per Board approved "Substitute, Summer School and Supplemental Rates":  Sharon Bridgers.*

16.     Recommended approval of the appointment* of district-wide per diem substitute teachers, as per attachment.

17.     Recommended acceptance of the resignation for the purpose of retirement for Michael Passow, Science Teacher, Middle School-Highlands, effective 8/31/07.

18.     Recommended acceptance of the resignations of:
        Beverly Christian, Speech Teacher, Mamaroneck Avenue School, effective 7/16/07
        Maritza Kerekes, School Psychologist, TSAP, Rochambeau School, effective 8/29/07
        Yahaira Mendez, Speech Teacher, George Washington School & Districtwide, effective 7/17/07

19.     Recommended approval of requests for childcare leaves for:
        Betsy Cicchetti, Elementary Education Teacher, George Washington School, effective 9/10/07-1/31/08
        Jennifer DeGraphenreed, English Teacher, High School, effective 9/1/07-1/31/08
        Diana Slavis, English Teacher, TSAP, Rochambeau School, effective 9/1/07-6/30/08

20.     Recommended approval to appoint and to rescind 2007 Summer School staff, as per attachment.

21.     Recommended approval of the appointment of Karen Kushnir, Learning Facilitator, Mamaroneck Avenue School, to the position of CSE Chairperson, Districtwide, effective 8/20/07.

22.     Recommended approval of compensation for the following, as per attachments:
    a.  2007-08 WIA Grant
    b.  2007-08 Technology Trainers
    c.  2007-08 Interscholastic and co-curricular appointments
    d.  2007 Summer work at New York Presbyterian Hospital Program
    e.  curriculum writing
    f.  professional development stipend
    g.  summer work by Larry Kilian, Coordinator, Testing, Evaluation and Funded Programs, at a per diem rate of pay
    h.  2006-07 stipends for trips abroad
    i.  2007-08 Calendar & Directory work

- 4 -

23.    Recommended approval of the Regular Substitute appointment of:

Pasquale Palumbo  (Replacing J. DeGraphenreed)
BA - SUNY/Empire State College  (Cultural Studies:  English)
MS Ed - CUNY/Lehman College  (Secondary Education English 7-12)
Certification:  Initial, English Language Arts 7-12
Assignment:  English Teacher, High School
Dates of Service:  8/31/07-1/31/08

24.    Recommended approval of the Probationary appointments of:

Lisette Maniatis  (Replacing D. Almeida, position re-assigned)
BA - SUNY/Binghamton  (Political Science & Psychology)
MS Ed - Fordham University  (Bilingual Psychology)
CAS - Fordham University  (Bilingual Psychology)
Certification:  Provisional, School Psychologist
Tenure Area:  School Psychologist
Assignment:  School Psychologist, Post Road School
Probationary Period:  8/31/07-8/30/09

Lauren Royce*  (Replacing I. Edwards)
BA - Iona College  (Psychology)
MST - Fordham University  (Childhood Education 1-6)
Certification:  Initial, Childhood Education  (Grades 1-6)
Tenure Area:  Elementary Education
Assignment:  Elementary Education Teacher, Mamaroneck Avenue School
Probationary Period:  8/31/07-8/30/10

Domingo Cabrera (Replacing C. Broderick, re-assigned)
BS - Polytechnic Institute/Leningrad, USSR  (Electrical Engineering)
MS - Polytechnic Institute/Leningrad, USSR  (Electrical Engineering)
MS - CCNY/CUNY  (Environmental Studies)
Certification:  Permanent, Biology, Chemistry, Physics, Mathematics & Bilingual Education
Tenure Area:  Science
Assignment:  Science Teacher, High School
Probationary Period:  8/31/07-8/30/09

*All of these appointments are conditional appointments, subject to and contingent upon, the satisfactory completion of the finger printing process and investigatory background check required by the New York State Education Law.  The Board of Education reserves the right to rescind these appointments without notice, upon receipt of any unsatisfactory report resulting from the aforementioned background check.

VI.    Other Action:

1.    Recommended approval of the probationary appointment of the Director of Special Programs and Services.

- 5 -

2.    Recommended acceptance of the Treasurer's Report for the month of June, 2007.

3.    Recommended approval to terminate the bid award to Space Age Alarms.

4.    Recommended approval of counsel's recommendation for a resolution pertaining to tax certiorari settlements.

5.    Recommended approval of a contract with Western Suffolk BOCES for marketing communications services with Syntax Communications, as per attachment.

VII.    <u>Board Discussion</u>:

## WILSON JACOBSON, P.C.

### ATTORNEYS AT LAW

THE INNS OF COURT BUILDING
99 COURT STREET, SUITE 2
WHITE PLAINS, NEW YORK 10601-4264
(914) 997-0825
Fax: (914) 997-0830
Email: leroywilsonjr@nysbar.com
rjacobson@nysbar.com

LEROY WILSON, JR.
ATTORNEY AT LAW

RONI L. JACOBSON
ATTORNEY AT LAW*
*Member NY, CT and DC Bars

BY Email to micheleschoenfeld@wpcsd.k12.nv.us and by facsimile to (914) 422-2080

# URGENT

August 6, 2007 [Date added]

Ms. Michele Schoenfeld
Clerk of the Board
5 Homeside Lane
White Plains, NY 10605

Re:    Space Age Alarms, Inc.

Dear Ms. Schoenfeld:

We represent Space Age Alarms, Inc.

From Michael Lynch's July 19, 2007 letter to Mr. Claude Johnson, President of Space Age Alarms, Inc. and your website, we understand that on your agenda for tonight's meeting will be a recommendation to approve the termination of "the bid award to Space Age Alarms." This is Agenda Item VI-3.

I request the opportunity to appear and speak in opposition to this proposed action. For this purpose, would you kindly fax or email to me the documents that the presenter will use to support this recommendation so that I might become as well informed as I can of the precise reasons for the recommendation.

I will fax this letter request to you as well just in case there is a problem with your email.

Very truly yours,

Leroy Wilson, Jr., Esq.
President

LWJr:rj

WILSON JACOBSON, P.C.
ATTORNEYS AT LAW

THE INNS OF COURT BUILDING
99 COURT STREET, SUITE 2
WHITE PLAINS, NEW YORK 10601-4264
(914) 997-0825
Fax: (914) 997-0830
Email: leroywilsonjr@nysbar.com
rjacobson@nysbar.com

LEROY WILSON, JR.
ATTORNEY AT LAW

RONI L. JACOBSON
ATTORNEY AT LAW*
*Member NY, CT and DC Bars

**BY Email to micheleschoenfeld@wpcsd.k12.ny.us and by facsimile to (914) 422-2080**

# URGENT

August 6, 2007 [Date added]

Ms. Michele Schoenfeld
Clerk of the Board
5 Homeside Lane
White Plains, NY 10605

Re:    Space Age Alarms, Inc.

Dear Ms. Schoenfeld:

We represent Space Age Alarms, Inc.

From Michael Lynch's July 19, 2007 letter to Mr. Claude Johnson, President of Space Age Alarms, Inc. and your website, we understand that on your agenda for tonight's meeting will be a recommendation to approve the termination of "the bid award to Space Age Alarms." This is Agenda Item VI-3.

I request the opportunity to appear and speak in opposition to this proposed action. For this purpose, would you kindly fax or email to me the documents that the presenter will use to support this recommendation so that I might become as well informed as I can of the precise reasons for the recommendation.

I will fax this letter request to you as well just in case there is a problem with your email.

Very truly yours,

Leroy Wilson, Jr., Esq.
President

LWJr:j

## WILSON JACOBSON, P.C.
ATTORNEYS AT LAW

___

THE INNS OF COURT BUILDING
99 COURT STREET, SUITE 2
WHITE PLAINS, NEW YORK 10601-4264
(914) 997-0825
Fax: (914) 997-0830
Email: leroywilsonjr@nysbar.com
rjacobson@nysbar.com

LEROY WILSON, JR.
ATTORNEY AT LAW

RONI L. JACOBSON
ATTORNEY AT LAW*
*Member NY, CT and DC Bars

**BY Email to** micheleschoenfeld@wpcsd.k12.ny.us **and by facsimile to (914) 422-2080**

# URGENT

August 6, 2007 [Date added]

Ms. Michele Schoenfeld
Clerk of the Board
5 Homeside Lane
White Plains, NY 10605

Re:    Space Age Alarms, Inc.

Dear Ms. Schoenfeld:

We represent Space Age Alarms, Inc.

From Michael Lynch's July 19, 2007 letter to Mr. Claude Johnson, President of Space Age Alarms, Inc. and your website, we understand that on your agenda for tonight's meeting will be a recommendation to approve the termination of "the bid award to Space Age Alarms." This is Agenda Item VI-3.

I request the opportunity to appear and speak in opposition to this proposed action. For this purpose, would you kindly fax or email to me the documents that the presenter will use to support this recommendation so that I might become as well informed as I can of the precise reasons for the recommendation.

I will fax this letter request to you as well just in case there is a problem with your email.

Very truly yours,

Leroy Wilson, Jr., Esq.
President

LWJr:f

**□ COPY**

WILSON JACOBSON, P.C.
ATTORNEYS AT LAW

THE INNS OF COURT BUILDING
99 COURT STREET, SUITE 2
WHITE PLAINS, NEW YORK 10601-4264
(914) 997-0825
Fax: (914) 997-0830
Email: leroywilsonjr@mysbar.com
rjacobson@mysbar.com

LEROY WILSON, JR.
ATTORNEY AT LAW

RONI L. JACOBSON
ATTORNEY AT LAW*
*Member NY, CT and DC Bars

BY HAND DELIVERY

August 6, 2007

Members of the Board
White Plains Board of Education

Ref.-August 6, 2007 Agenda Item VI-3- Space Age Alarms, Inc.

Dear Sirs and Madams:

We represent Space Age Alarms, Inc.

We oppose the recommendation to approve the termination of the bid awards that resulted in two contracts to Space Age Alarms at your June 11, 2007 meeting.

We received copies of the enclosed correspondence on Monday, August 6, 2007 and thus have had only a preliminary opportunity to familiarize ourselves with this matter.

We would like for you to review all of the documents that we are submitting to you, and after your review, to disapprove the recommendation to terminate the contracts and to direct Mr. Michael J. Lynch, the Board's Director of School Facilities & Operations to take whatever steps he needs to take with Alarm Specialists, Inc., the outgoing contractor of 11 years to turn over the access codes and other related material to Space Age Alarms so that it can begin to do the work called for by the contracts.

In essence, the outgoing contractor-Alarm Specialists, Inc. – has to date refused to give Space Age the various access codes to the fire alarm and security alarm systems that the Board has selected Space Age to monitor and maintain. Alarm Specialists placed a lock-out on the access codes, on the apparent theory that it owns the security control panels, fire communicator panels, and radio communicators along with a select number of control pads. It relies on "the bid documents" to say that this equipment, and the software for these systems belong to Alarm Specialists. See letter dated July 24, 2007 from Alarm Specialists, Inc. to Mr. Claude Johnson.

`3`

On the other hand, the "NOTE:" on page 26 of the Bid # 2007-16 makes clear that "Installed key pads/communicators are the property of the school district."

I have not had an opportunity to examine all of the documents that relate to this matter, but I would expect to find provisions that state precisely who owns what.

It seems to us that the dispute is one between the old contractor, Alarm Specialists and the Board.

If you review Mr. Johnson's June 4, 2007 letter to Mr. Lynch, you will see that Mr. Johnson states that: "In any event we will need access codes for each Burglar, fire, Access control system with telephone numbers, in order that we input our monitoring data. The existing systems operation program and user codes should remain."

To date, Mr. Lynch has refused to provide this information to Space Age Alarms. Without the access code information, Space Age cannot access the systems currently in place.

Instead Mr. Lynch wrote a letter to Mr. Johnson dated June 6, 2007 stating, among other things, that "The bid documents clearly state in the Monitoring & Maintenance of Security Alarm systems and Fire Alarm systems, the Bidder shall provide new keypad and communicator devices including the radio back-up."

Although this statement is contained in the Bid # 2007-16 covering security alarm systems, it does not appear in the Bid 2007-15 covering the fire alarm systems.

Mr. Lynch also wrote to Mr. Johnson concerning the certification of his personnel. I have not had an opportunity to see what the contract and bid documents say with respect to this issue, however, Mr. Johnson did write to Mr. Lynch on June 20, 2007 telling him of Space Age Alarms exceptional qualifications.

On letters dated July 7, and July 12, Mr. Johnson against requested the access code information and other related information from Mr. Lynch. He has not received it.

Unfortunately, Mr. Michael J. Lynch, the Board's Director of School Facilities & Operations provided no assistance to Mr. Johnson in getting Alarm Specialists to provide the information to Mr. Johnson that he needs.

I should note that on July 16, 2007 Mr. Lynch stated in his letter of intent to terminate that "We also wish to inform you that due to a bid error on our part, we will be rebidding the maintenance portion of the burglar and fire alarm systems."

Mr. Lynch does not spell out what the error is.

It seems to us that Mr. Lynch is recommending that the contract with Space Age alarms be rescinded when he is responsible for Space Age not being able to perform the contracts.

None of this makes any rational sense to us.

Earlier today, as you will see from the enclosed letter that I emailed and faxed to Ms. Schoenfeld, "I request the opportunity to appear and speak in opposition to this proposed action. For this purpose, would you kindly fax or email to me the documents that the presenter will use to support this recommendation so that I might become as well informed as I can of the precise reasons for the recommendation."

We did not get a response from her, as of 4:52 P.M., so we are in the dark as far as the specific reasons for the recommendations.

Mr. Johnson is rightfully suspicious that he might be subject to unfair treatment.

Very truly yours,

Leroy Wilson, Jr., Esq.
President

LWJr/rj

4E    Thursday, August 9, 2007    The Journal News

## Legal Notices

Fax your Legal Notices to (91

Advertisement
Notice to Contractors

Sealed Bids or proposals for BID #2007-23: MONITORING, ANNUAL TESTING & MAINTENANCE OF FIRE ALARM SYSTEMS IN VARIOUS LOCATIONS will be received by the Board of Education of the City of White Plains, New York at the Office of the Board of Education, 5 Homeside Lane, White Plains, New York until 2:00 P.M., Friday, August 24, 2007 at which time and place the proposals will be publicly opened and read.

Specifications and other contract documents may be examined and a copy thereof obtained upon application at the Office of the Board of Education.

Each bid must be accompanied by cash, certified check or bid bond in an amount of not less than five (5) percent of the amount of the bid, made payable to the Board of Education, White Plains, New York as a security that in case the contract is awarded to the bidder he will within five days after written notice of such award execute the contract and furnish security required for the performance thereof. Upon failure to do so, he shall forfeit the security as liquidation damages. Failure to supply the required bid security at the time of bid opening shall disqualify bidder from consideration.

The checks of all except the three lowest bidders will be returned within three days after the opening of the bids, and the remaining checks will be returned when the contract is executed, or in any event within thirty (30) days after the opening of the bids. No bid may be withdrawn within thirty (30) days after the opening thereof.

The Board of Education reserves the right to reject all proposals or to reject the proposal or proposals of any bidder who after due hearing fail to give satisfactory evidence of his or their qualifications to satisfactorily perform work of the character of the proposed work.

CITY SCHOOL DISTRICT OF THE
CITY OF WHITE PLAINS, NEW
YORK

Michael J. Lynch

Director of School Facilities
& Operations

Advertisement
Notice to Contractors

Sealed Bids or proposals for BID #2007-24: MONITORING, ANNUAL TESTING & MAINTENANCE OF SECURITY ALARM SYSTEMS IN VARIOUS LOCATIONS will be received by the Board of Education of the City of White Plains, New York at the Office of the Board of Education, 5 Homeside Lane, White Plains, New York until 2:00 P.M., Friday, August 24, 2007 at which time and place the proposals will be publicly opened and read.

Contractor must respond to calls within 24 hours of receiving call.

Specifications and other contract documents may be examined and a copy thereof obtained upon application at the Office of the Board of Education.

Each bid must be accompanied by cash, certified check or bid bond in an amount of not less than five (5) percent of the amount of the bid, made payable

to the Board of Education, White Plains, New York as a security that in case the contract is awarded to the bidder he will within five days after written notice of such award execute the contract and furnish security required for the performance thereof. Upon failure to do so, he shall forfeit the security as liquidation damages. Failure to supply the required bid security at the time of bid opening shall disqualify bidder from consideration.

The checks of all except the three lowest bidders will be returned within three days after the opening of the bids, and the remaining checks will be returned when the contract is executed, or in any event within thirty (30) days after the opening of the bids. No bid may be withdrawn within thirty (30) days after the opening thereof.

The Board of Education reserves the right to reject all proposals or to reject the proposal or proposals of any bidder who after due hearing fail to give satisfactory evidence of his or their qualifications to satisfactorily perform work of the character of the proposed work.

CITY SCHOOL DISTRICT OF THE
CITY OF WHITE PLAINS, NEW
YORK

Michael J. Lynch

Director of School Facilities &
Operations

WILSON JACOBSON, P.C.
ATTORNEYS AT LAW
———
THE INNS OF COURT BUILDING
99 COURT STREET, SUITE 2
WHITE PLAINS, NEW YORK 10601-4264
(914) 997-0825
Fax: (914) 997-0830
Email: leroywilsonjr@nysbar.com
rjacobson@nysbar.com

RONI L. JACOBSON
ATTORNEY AT LAW*
*Member NY, CT and DC Bars

LEROY WILSON, JR.
ATTORNEY AT LAW

Via facsimile to (914) 422-2080

# URGENT

August 10, 2007

Ms. Michele Schoenfeld
Clerk of the Board
5 Homeside Lane
White Plains, NY 10605

Re:    Space Age Alarms, Inc.-August 6, 2007 Meeting, Item VI-3.

Dear Ms. Schoenfeld:

As you know, we represent Space Age Alarms, Inc.

I received a telephone call from Mr. Fred Seiler Wednesday, August 8, 2007, telling me that he was not ignoring the request that we had made at the August 6, 2007 Board meeting, that he had not been able to get in touch with the Board's lawyers, that he would be on vacation for the next two days, and that he would respond to me early next week.

In the meantime, today, I received a copy of a legal notice that appeared in August 8, 2007 Journal News re-bidding the matters that Mr. Seiler and Mr. Connor told me would be tabled at the August 6, 2007 meeting.

May I have an explanation of the reason this notice appeared today?

In the absence of any information on the name of the attorney at Ingerman Smith who was handling this matter, I telephoned and emailed John H. Gross, Esq. in their Hauppauge office. I have known Mr. Gross for several years.

A few minutes ago, I telephoned his office, left a voicemail message for him and then called back to get the contact information for the Westchester County based attorney who is handling your matters. I understand that this is Ralph De Marco, Esq., so I am copying him on this letter. I also understand that he will be out until Monday.

EX 5

I will fax this letter request to you as well just in case there is a problem with your email.

Very truly yours,

Leroy Wilson, Jr., Esq.
President

LWJr/rj

cc:    Ralph DeMarco, Esq. via fax to 1-914-777-1955

to (914) 696-8403.

ders will be retained fifteen days after the open of bids, and the remain will be retained when is essential of his paid work, or as statutorily perform within thirty (30) days after g of the bids. No bid to bidders within thirty after the opening there

of Education reserves reject all proposals or a proposal or proposal bidder who after due

Michael J. Lynch

Director of School Facilities & Operations

Advertisement Works to Contractors

Sealed Bids or proposals for BID ACOUSTIC MONITORING, ALARM AI TESTING & MAINTENANCE OF SECURITY ALARM SYSTEMS IN VARIOUS LOCATIONS will be received by the Board of Education of the City School District of the City of White Plains, NEW York in the Office of the

Board of Education, 5 Homeside Lane, White Plains, New York til 2:00 P.M., Friday, August 24 2001 at which time and place the proposals will be publicly opened and read.

Contractor must respond to calls within 24 hours of reporting call.

Specifications and other contract documents may be examined and a copy thereof obtained upon application in the Office of the Board of Education.

Each bid must be accompanied by cash, certified check or bid bond in an amount not less than five (5) percent of the amount of the bid, made payable to:

In the Board of Education, White Plains, New York as a security that, in case the successful bidder ascribed to the bidder, he will within five days after written no of each award execute a contract and furnish required the performance security required for the performance of the opened for the performance of the contract is awarded to him on Upon failure to do so, he shall forfeit as the security of far contain damages the amount of bid ply the required bid security as the time of bid opening shall be five (5) percent of the amount of the bid, made payable item.

The checks of all except the three lowest bidders will be retained until, these days after the open of the bids, and the remaining checks will be retained when the contract is executed or thirty days after the opening of the bids, later.

the contract is executed to to any time within thirty (30) days after the opening of the bids, later may be otherwise within thirty (30) days after the opening there

The Board of Education reserves the right to reject all proposals or

to reject the proposal or proposals of any bidder who after due hearing fail to give satisfactory evidence of his or their qualified to perform the work or to give statutory proof Board of the character of the pro posed work.

CITY SCHOOL DISTRICT OF THE CITY OF WHITE PLAINS, NEW YORK

Michael J. Lynch

Director of School Facilities &

18/07 Journal News

White Plains City School District
5 Homeside Lane
White Plains, NY 10605

# F A X

TO: Space Age Alarms

DATE: AUGUST 21, 2007
PHONE: 914-664-6152
FAX#: 914-664-6052

# OF PAGES INCLUDING COVER: 5

FROM: MIKE LYNCH

PHONE: 914-422-2051
FAX #: 914-422-2297

BID #2007-23: MONITORING, ANNUAL TESTING & MAINTENANCE OF FIRE ALARM SYSTEMS

BID #2007-24: MONITORING, ANNUAL TESTING & MAINTENANCE OF SECURITY ALARM SYSTEMS

ATTACHED FIND ADDENDUM #1 FOR EACH OF THE ABOVE-REFERENCED BIDS.

PLEASE REPLACE PAGES 1 & 2 OF THE FORM OF PROPOSAL WITH ATTACHED ADDENDUMS.

THANK YOU.

White Plains City School District
5 Homeside Lane
White Plains, NY 10605

# F A X

TO: Space Age Alarms

DATE: AUGUST 21, 2007
PHONE: 914-664-6152
FAX#: 914-664-6052

# OF PAGES INCLUDING COVER: 5

FROM: MIKE LYNCH

PHONE: 914-422-2051
FAX #: 914-422-2297

BID #2007-23: MONITORING, ANNUAL TESTING &
MAINTENANCE OF FIRE ALARM SYSTEMS

BID #2007-24: MONITORING, ANNUAL TESTING &
MAINTENANCE OF SECURITY ALARM SYSTEMS

ATTACHED FIND ADDENDUM #1 FOR EACH OF THE ABOVE-
REFERENCED BIDS.

PLEASE REPLACE PAGES 1 & 2 OF THE FORM OF PROPOSAL WITH
ATTACHED ADDENDUMS.

THANK YOU.

# ADDENDUM #1

## FORM OF PROPOSAL

### BID #2007-23: MONITORING, ANNUAL TESTING & MAINTENANCE OF FIRE ALARM SYSTEMS

CHURCH STREET SCHOOL, GEORGE WASHINGTON SCHOOL, MAMARONECK AVENUE SCHOOL,
POST ROAD SCHOOL, RIDGEWAY SCHOOL, HIGHLANDS MIDDLE SCHOOL, EASTVIEW SCHOOL,
WHITE PLAINS HIGH SCHOOL, DAMMANN HOUSE, ROCHAMBEAU SCHOOL and EDUCATION HOUSE

Pursuant to and in compliance with your advertisement for bids dated 2:00 P.M., Friday, August 24, 2007 the undersigned, having become familiar with the local conditions affecting the cost of work, the specifications, including advertisement for bids, instruction to bidders, form of agreement, the detailed specifications and addenda nos. ___, hereto, and having examined the site, hereby proposes to furnish all labor, materials, transportation and equipment necessary or required for the performance and completion in a workmanlike manner of all work in strict accordance with the contract documents and drawings and with all addenda for the sum of:

ANNUAL

Monitor/Maintenance of fire alarm system as specified - Districtwide ..................... $ _____

2 inspections per year - Districtwide ........................................................................ $ _____

Change backup radio system from analog to digital per location ............................... $ _____

Change key pad per location ...................................................................................... $ _____

Change battery per system ......................................................................................... $ _____

## AWARD TO BE MADE BY TOTAL

At the request of the School District, the contractor shall perform all additional work on a time and material basis at the rates established below. For the purpose of this contract and due to the nature of the facilities covered under the terms of this agreement "STRAIGHT TIME" will be considered MONDAY through FRIDAY, 8:00 A.M. through 4:30 P.M. All work performed at any other times will be deemed "OVERTIME".

Straight Time ....................................................... $_____ /Hr.

After 8 Hours or Saturday ................................... $_____ /Hr.

Sunday and Holidays ........................................... $_____ /Hr.

Service Call Charge ............................................. $_____

NO SURCHARGES, I.E., FUEL WILL BE PERMITTED.

The undersigned further agree (agrees) that the certified check or bid bond accompanying this proposal be left in escrow with the Board of Education and that, if the undersigned default (defaults) in executing the agreement within ten days after written notice of the award of the contract, or in furnishing the required bond within said time, then the certified check or bid bond shall be forfeited to the Board of Education as liquidated damages; but if this proposal is not accepted within thirty (30) days, or if the undersigned execute (executes) and delivers said contract and bond, the check or bid bond shall be returned to the undersigned. Each bid must be accompanied by cash, certified check or bid bond in an amount of not less than five (5) percent of the amount of the bid, made payable to the Board of Education, White Plains, New York as a security that in case the contract is awarded to the bidder he will within five days after written notice of such award execute the contract and furnish security required for the performance thereof.

|  |  |
|---|---|
| _____ | _____ |
| Dated | Signed |
|  | _____ |
|  | Print Name |
|  | _____ |
|  | Title |
|  | _____ |
|  | Company Name |
|  | _____ |
|  | Address |
| _____ | _____ |
| Telephone | Address |
| _____ | _____ |
| Fax | Federal E.I. Number |

This proposal is submitted by:

An individual doing business as _____

A partnership doing business under the firm name and style of _____

A corporation incorporated under the laws of the State of New York doing business under the name of _____

NOTE: Submit a list of Annual Holidays with your bid.

NOTE:
1) *An invoice for work completed will not be considered ready for payment unless accompanied by a valid certified payroll. All incomplete invoices will be returned unpaid. Certified payrolls must be submitted within 30 days of work.*
2) *Invoices must clearly delineate labor and material, and not be lump sum bids.*

# ADDENDUM #1

## FORM OF PROPOSAL

### BID #2007-24: MONITORING, ANNUAL TESTING & MAINTENANCE OF SECURITY ALARM SYSTEMS

CHURCH STREET SCHOOL, GEORGE WASHINGTON SCHOOL, MAMARONECK AVENUE SCHOOL, POST ROAD SCHOOL, RIDGEWAY SCHOOL, HIGHLANDS MIDDLE SCHOOL, EASTVIEW SCHOOL, WHITE PLAINS HIGH SCHOOL, DAMMANN HOUSE, ROCHAMBEAU SCHOOL and EDUCATION HOUSE

Pursuant to and in compliance with your advertisement for bids dated 2:00 P.M., Friday, August 24, 2007 the undersigned, having become familiar with the local conditions affecting the cost of work, the specifications, including advertisement for bids, instruction to bidders, form of agreement, the detailed specifications and addenda nos. ____ hereto, and having examined the site, hereby proposes to furnish all labor, materials, transportation and equipment necessary or required for the performance and completion in a workmanlike manner of all work in strict accordance with the contract documents and drawings and with all addenda for the sum of:

Tie in burglar alarm communicator to digital radio backup system per location (shared with fire alarm) $ _____

Programming proximity readers – per card ...................................................................................... $ _____

Set up programming so proximity readers can be programmed remotely per location ...................... $ _____

Monitor/Maintenance of burglar alarm system as specified - Districtwide ........................................ $ _____

2 inspections per year - Districtwide................................................................................................. $ _____

Change backup radio system from analog to digital per location .................................................... $ _____

Change key pad per location .......................................................................................................... $ _____

Change battery per system ............................................................................................................. $ _____

## AWARD TO BE MADE BY TOTAL

At the request of the School District, the contractor shall perform all additional work on a time and material basis at the rates established below. For the purpose of this contract and due to the nature of the facilities covered under the terms of this agreement "STRAIGHT TIME" will be considered MONDAY through FRIDAY, 8:00 A.M. through 4:30 P.M. All work performed at any other times will be deemed "OVERTIME".

Straight Time ....................................................... $ _____ /Hr.

After 8 Hours or Saturday ..................................... $ _____ /Hr.

Sunday and Holidays............................................. $ _____ /Hr.

Service Call Charge .............................................. $ _____

The undersigned further agree (agrees) that the certified check or bid bond accompanying this proposal be left in escrow with the Board of Education and that, if the undersigned default (defaults) in executing the agreement within ten days after written notice of the award of the contract, or in furnishing the required bond within said time, then the certified check or bid bond shall be forfeited to the Board of Education as liquidated damages; but if this proposal is not accepted within thirty (30) days, or if the undersigned execute (executes) and delivers said contract and bond, the check or bid bond shall be returned to the undersigned. Each bid must be accompanied by cash, certified check or bid bond in an amount of not less than five (5) percent of the amount of the bid, made payable to the Board of Education, White Plains, New York as a security that in case the contract is awarded to the bidder he will within five days after written notice of such award execute the contract and furnish security required for the performance thereof.

_____          Signed _____

Dated                            Print Name _____

                                 Title _____

                                 Company Name _____

                                 Address _____

_____          Address _____

Telephone                        Federal E.I. Number _____

_____

Fax

This proposal is submitted by:

An individual doing business as _____

A partnership doing business under the firm name and style of _____

A corporation incorporated under the laws of the State of New York doing business under the name of _____

NOTE: Submit a list of Annual Holidays with your bid.

NOTE:
1) An invoice for work completed will not be considered ready for payment unless accompanied by a valid certified payroll. All incomplete invoices will be returned unpaid. Certified payrolls must be submitted within 30 days of work.)
2) Invoices must clearly delineate labor and material, and not be lump sum bids.



7ceispam.txt

1

7ceispam ag                Motion
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SPACE AGE ALARMS, INC.,

                    Plaintiff,

            v.                          07 Civ. 7606 CLB

THE BOARD OF EDUCATION OF
THE WHITE PLAINS CITY SCHOOL
DISTRICT and ALARM
SPECIALISTS, INC.,

                    Defendants.

------------------------------x

                                        White Plains, N.Y.
                                        December 14, 2007
                                        11:00 a.m.

Before:

                    HON. CHARLES L. BRIEANT,

                                        District Judge

                        APPEARANCES
LEROY WILSON, JR.
     Attorney for Plaintiff

INGERMAN SMITH, L.L.P.
     Attorney for Defendant White Plains
MICHAEL GERARD MCALVIN

JASNE & FLORIO
     Attorney for Defendant Alarm Specialists
HUGH G. JASNE

                        MOTION

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

2

7ceispam ag                Motion
            THE COURTROOM DEPUTY:  Space Age Alarms.
            MR. WILSON:  Good morning, your Honor.  Leroy Wilson
Jr. representing Space Age Alarms, plaintiff in this case.
            THE COURT:  All right.  We're a little short of time
but we can take your motions under submission.  If you want to
make it very brief, I'll hear you.  Whose motions are they?
            MR. WILSON:  Defendant's motion to dismiss.
            MR. MCALVIN:  Michael McAlvin from the law firm of
                        Page 1

7ceispam.txt
```
 9   Ingerman Smith for the defendants, Board of Education of the
10   White Plains City Schools, as well as Michael Lynch.  The
11   district made a 12(b) motion to dismiss plaintiff's claims.
12           Just to give you a background as to the facts pursuant
13   to the allegations made in the complaint.
14           THE COURT:  Can the motion be cured by amending the
15   complaint?
16           MR. McALVIN:  I don't think so, Judge.
17           THE COURT:  Because you see, under the motion I have
18   to assume all plausible allegations as true.
19           MR. McALVIN:  Absolutely, Judge.  But making
20   conclusionly allegations is not sufficient.  Particularly with
21   regard to due process.  This is a public works contract.  The
22   district had put out for bid for 2007, 2008 two of their
23   contracts, their alarm monitoring contracts, their security and
24   fire alarm contracts.  Plaintiff submitted a bid, did a
25   walk-through, was told these are the things you need to do, you
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    3
7ceispam ag                 Motion
```
 1   need to monitor it , maintain it, you need to install certain
 2   equipment.  Plaintiff had said at the time I think we can use
 3   the old equipment, and they were told no, you need to put in
 4   new equipment.  The contracts were awarded.
 5           THE COURT:  Does the contract say in writing that you
 6   have to have new equipment?
 7           MR. McALVIN:  Yes, your Honor.  The contracts are set
 8   forth in the motion.
 9           THE COURT:  Did the bid documents say that?
10           MR. McALVIN:  Correct.  That they're to install new
11   equipment.  And that ended up being the real dispute here,
12   Judge.  These two contracts were awarded in June of '07,
13   $18,000 contracts for the both of them.  And for several months
14   over the course of the summer there was a dispute as to:  I
15   want to use the old equipment; no, you have to put in new
16   equipment.
17           And part of the reason the district wanted new
18   equipment was they'r changing over from the analog to digital
19   because of the federal statutes requiring that, that we can no
20   longer use analog.  And the old equipment was analog and we
21   wanted digital.  So August 6th the school board had put on
22   their agenda the proposal to terminate those contracts based on
23   this dispute.  Mr. Wilson appeared at that hearing, spoke with
24   the board, submitted different documents to the board and the
25   board took that under consideration, still hoping that Space
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    4
7ceispam ag                 Motion
```
 1   Age, plaintiff would comply with the contract obligation.  They
 2   did not.
 3           So on August 27, 2007, this is not in the complaint,
 4   but the district did terminate those contracts effective
 5   September 5th.  And in passing in the complaint, plaintiff
 6   alleges in the last two paragraphs in its factual portion of
 7   the complaint, that plaintiff, their principals are
 8   African-American and the former and now present alarm company
 9   that services the school district, their principals are
10   Caucasian.  This ended up being a breach of contract claim
11   where plaintiff ended up tossing in the kitchen sink, First
12   Amendment violations, due process violations.
13           THE COURT:  You may have to take discovery and make a
```
                               Page 2

```
                              7ceispam.txt
14  motion for summary judgment.
15           MR. MCALVIN:  That may be the case.  But if you look
16  at the due process violation, there's no property or liberty
17  interest in public works contract.  With regard to a liberty
18  interest, there's no right to the public works contract even if
19  termination of that contract is a serious deprivation in terms
20  of losing money.  But we're talking about $18,000 contracts.
21           THE COURT:  But I have to treat that with the same
22  seriousness as any other constitutional claim.  I guess I'll
23  have to review the pleading and give it consideration.
24           MR. MCALVIN:  One other issue if I may.  The plaintiff
25  is required to submit a notice of claim upon the district.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

⊓                                                                          5

```
    7ceispam ag              Motion
1            THE COURT:  If he's suing for money.
2            MR. MCALVIN:  And he is suing for money.
3            THE COURT:  Not for injunctive relief.
4            MR. MCALVIN:  With regard to his money claims, he's
5   not filed, it's not been alleged, and that's an absolute
6   condition precedent to filing, particularly state claims.  I'm
7   not going to say 1983 claims.  But there's case law out there
8   that says that's a precondition.
9            THE COURT:  You're both united in interest, are you?
10           MR. JASNE:  Yes, your Honor.  May I just add one very
11  brief comment.
12           THE COURT:  Very brief if you will.
13           MR. JASNE:  Simply on behalf of Alarm Specialists, I
14  don't think the plaintiff has made the nexus for whatever has
15  happened in this contract to bridge the gap to racial
16  discrimination.  I'd ask your Honor to keep that in mind,
17  please.  Thank you.
18           THE COURT:  Mr. Wilson.
19           MR. WILSON:  Thank you, your Honor.  In view of the
20  time constraints, your Honor, I'd like first to address the
21  comment just made.  We don't allege racial discrimination
22  against his client Alarm Specialists, so that's not a part of
23  this case.
24           THE COURT:  You're just suggesting that his presence
25  in the case is necessary for you to have equitable relief.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

⊓                                                                          6

```
    7ceispam ag              Motion
1            MR. WILSON:  No, damages as well, your Honor.  Because
2   what they did was to lock out my client from the security
3   system so that my client could not perform the contract.
4            Now, I'd like to address the remarks that Mr. McAlvin
5   made.  Just before that, your Honor, I feel a duty to point out
6   to the Court that on page 8 of my memorandum of law in the
7   second line from the top, the theory that I am talking about is
8   7 years and not 70 years.  I made an error there.  And that was
9   referring to some information out of the Bell Atlantic case.
10           Now, the Court had asked several times what the
11  parties want.  What we want is the Court to deny the motion to
12  dismiss in its entirety for the reason that the pleadings are
13  totally adequate under Supreme Court precedence in this case.
14           THE COURT:  If they're not, the Court will give you
15  leave to amend.
16           MR. WILSON:  In our case, taking into account what the
17  Supreme Court said in Ericsson, even if the Court might not
18  consider the pleading on its face to be sufficient, it could
                              Page 3
```

                                   7ceispam.txt
19    also consider documents that are attached to the pleadings, and
20    there are documents attached to the pleadings. Under the
21    Federal Rules of Civil Procedure those documents are considered
22    to be a part of the complaint. And their own documents as
23    well.
24          Mr. McAlvin has mischaracterized what these contracts
25    said. You will see that he quoted only part of what the
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      7
      7ceispam ag              Motion
 1    contracts say with respect to whether or not new equipment
 2    should be submitted and installed by the contractor. In fact,
 3    you'll see from our submission that the same contract and the
 4    same sentence, the same paragraph says that if the old
 5    equipment which was installed in the school facilities is
 6    adequate, then that equipment could be used with the approval
 7    of Mr. Lynch, who is the facilities person in charge of
 8    security systems for the school district.
 9          He has also mischaracterized what the dispute is
10    about. It has nothing to do with whether or not new equipment
11    should have been provided. What the complaint alleges is that
12    after my client got the contract, he asked for the access code
13    so he could access the security system and the fire system in
14    order to be able to perform his contract. Mr. Lynch, who was
15    the final policy-maker as far as the school board is concerned,
16    and the school board refused to address that issue. They did
17    not even address that issue on their motion to dismiss, even
18    though we raised it. So it had nothing to do with whether or
19    not new equipment should be provided.
20          With respect to the meeting at which I appeared,
21    Mr. McAlvin would have the Court believe that I made a full
22    appearance, that we had a fair opportunity for a hearing before
23    the school board at the August 6th meeting. That in fact did
24    not happen. Before the meeting began, your Honor, I gave a set
25    of documents to the clerk of the school board to ask her to
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      8
      7ceispam ag              Motion
 1    give those documents to all of the members of the board so that
 2    they would have those, so that when the board finally made its
 3    decision as to whether or not to terminate the contract they
 4    would have my client's information. The fact of the matter is
 5    I did not make a statement on the merits. When I arrived at
 6    the meeting Mr. Salas, who was the assistant superintendent for
 7    business, told me that the matter was going to be tabled. I
 8    simply made a procedural presentation and --
 9          THE COURT: This is a pleading issue.
10          MR. WILSON: That's exactly right, your Honor.
11          THE COURT: It's a pleading issue.
12          MR. WILSON: In our opinion, the pleadings are
13    sufficient under Bell Atlantic and --
14          THE COURT: That's either a yes or no.
15          MR. WILSON: Yes, it is. And to that, I want to point
16    out to the Court that in their motion to dismiss in the main
17    papers they cited not one single Supreme Court case which
18    controlled this issue.
19          THE COURT: I understand your position. I'm treating
20    it solely as a pleading motion. If the motion is granted,
21    you'll have leave to amend.
22          MR. WILSON: Thank you, your Honor.
23          THE COURT: Fully submitted, decision reserved.
                                 Page 4

```
                              7ceispam.txt
24                    Thank you for your attendance here today.
25                    (Proceedings adjourned)
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SPACE AGE ALARMS, INC.,

                              Plaintiff,

           - against -                                        07 Cv. 7606 (CLB) (MDF)

THE BOARD OF EDUCATION of the                                *Memorandum and Order*
WHITE PLAINS CITY SCHOOL DISTRICT,
MICHAEL J. LYNCH and ALARM
SPECIALISTS, INC.,

                              Defendants.
--------------------------------------------------------x
Brieant, J.

        By motion (Doc. 15) filed October 26, 2007 in this civil rights litigation, Defendants

moved to dismiss.  The motion was heard and fully submitted for decision on December 14,

2007.


        The Complaint is brought by Space Age Alarms, Inc., a New York Corporation which

designs, installs and repairs Security and Fire Alarm Systems.  Defendants are the Board of

Education of the City of White Plains School District and Mr. Michael J. Lynch, its Director of

Facilities and Operations at relevant times.  The Defendant, Alarms Specialist, Inc. is also a

New York Corporation engaged in the same work as Plaintiff.  Plaintiff's principals and

shareholders are African Americans.


        The underlying dispute is essentially a breach of contract which is tendered to the Court

as a violation of the civil rights of Plaintiff's principals.

                                          -1-

The following facts are viewed most favorably to the non-moving parties.

The School District in the regular conduct of its affairs and acting through Defendant Lynch advertised for bids to perform two separate contracts (Bid 2006-15 and Bid 2007-16) to provide monitoring and maintenance service of Fire Alarm Systems and Security Alarm Systems, respectively in buildings operated by the School District. Space Age began to respond to the request for bids and engaged in the customary "walk-thru" of the premises prior to submitting its bids.

After the award of the two contracts for the total sum of $18,444.00 issued to Plaintiff as the successful bidder, a dispute occurred between Plaintiff in its capacity as vendor and the School District. Here again, viewed most favorably to Plaintiff, apparently the School District failed to turn over access codes which were necessary to be used by Plaintiff to perform its obligations under the contracts, refused to permit Plaintiff to use existing equipment which was still useful, claiming the right to require all new equipment, and attempted to impose a requirement by the City of White Plains Building Department that the Plaintiff vendor forward a Certification that its technicians are all factory authorized for maintaining the various fire control panels (Compl. at ¶ 11).

Space Age failed to perform, attributing its failure of performance to breach of contract by the School District in failing to furnish the access codes, and refusing to accept recycled equipment. The District, by Mr. Lynch, wrote on July 19, 2007 that Space Age Alarms, Inc. was

-2-

in default of the monitoring contract for the Burglar and Fire Alarms because it had not

"switched over the communicators to your company" and stated that he would recommend at the

August 6th Board Meeting that the contract be terminated.  The School District also indicated

because of a "Bid error" it would be re-bidding the maintenance portion of the Burglar and

Alarm Systems contract.

The Complaint details the correspondence between the parties which suggests a

fundamental misunderstanding as to the obligations of the parties under the bid documents.

There seems also to be a dispute (Compl. at ¶ 35) as to ownership of some of the equipment

installed by the prior vendor (Defendant Alarm Specialists, Inc.) represented by the School

District to be its property and also claimed by Alarm Specialists.  By a letter dated July 31, 2007,

Space Age wrote to Defendant Lynch stating, in effect, that by reason of a failure of the School

District to "disable the local lockout or advise us to swap out the current security alarm system/

keypads per my letter dated July 24, 2007, we cannot provide any service nor will we bring the

installation of new radio back-up systems or digital communicators for monitoring the existing

fire alarms systems per Bid 2007-15."

Based on this communication, the School Board, on August 6, 2007 authorized the

recommended decision to terminate the Bid Award to Space Age Alarms.  Plaintiff protested this

action and submitted a letter to the Board Members.  Although a Board Member had informed

Plaintiff's attorney that the matter of terminating the bid and re-advertising would be "tabled"

apparently it was not, and the Board re-advertised and awarded a replacement contract with

Alarm Specialists, Inc.  This lawsuit followed.

The Complaint alleges: Violation of Due Process under the Fourteenth Amendment (Count 1); Violation of the First Amendment in that the Board and Mr. Lynch deprived the Plaintiff of its right to petition for duress of grievances (Count 2); Violation of Section 1981 of Title 42, U.S. Code, under Count 3 in that Defendants discriminated against Plaintiff in making and enforcing contracts because the corporation was "owned by black people" (Compl. at ¶ 81). The Complaint also includes State law claims under the New York State Constitution, the New York Executive Law § 296(13), the New York State Education Law and Breach of Contract.  The Co-defendant Alarm Specialists is also sued for tortuous interference.

The Court agrees with movants that this case is essentially a Breach of Contract case. Underlying the dispute are misunderstandings as to the extent to which the Plaintiff would be entitled to use existing facilities and equipment, and whether the School District, in fact, owned the facilities which the bid documents represent that it did.

The furnishing of goods and services to a school district in New York is controlled by statute and acquisitions of the sort intended in this case must be, with exceptions not material, controlled by competitive public bidding.

The contracts were terminated by the School District after the dispute arose as to the nature and extent of its obligations and those of its vendor.  While the Complaint presents this

-4-

cause as a Constitutional violation, the dispute essentially arises out of a contract claim. A plaintiff may not maintain such a claim against a School District or its agent Lynch because it has failed to comply with the Notice of Claim requirements of § 3813 of the New York State Education Law. This Notice of Claim requirement is jurisdictional.

It is an expressed part of the General Conditions of the bid that while the contractor may use existing equipment, this requires the approval of the Director of Facilities and Operations for the School District and absent such approval, which was never received, the Contract required the installation of all new equipment. By making the allegation of racial discrimination, Plaintiff seeks to convert this ordinary commercial dispute into a Constitutional tort. The Plaintiff has not adequately pleaded racial discrimination. See *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987). No circumstances are shown which give rise to a plausible inference of racially discriminatory intent and any assertions to that effect are inadequate. Indeed to charge that a Board of public officials elected by the community are racially biased comes with the ill grace, especially when, as Defendants point out, two of the seven elected members of the Board are themselves African-Americans. The persons who terminated the Contract for the alleged breach were the same persons who, two and one-half months earlier, authorized the awarding of the bids to Plaintiff. See *Grady v. Affiliated, Inc.,* 130 F.3d 553, 560 (2d. Cir. 1997). ("When the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred such a short time after the hiring.") Even if the School District misconstrued its contracts in its own favor, and the case is by no means clear that it did,

-5-

doing so will not support a finding of racial discrimination.

The Motion is granted. The Breach of Contract claims are dismissed for failure to file a timely Notice of Claim.  The Constitutional and Federal statutory claims are dismissed for failure to state a claim.  The claims arising under New York Law are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction of those claims, following dismissal of the Federal claims.

The Clerk shall file a final judgment, and shall terminate all motions pending as of March 11, 2008 as moot and close the case.

SO ORDERED.

Dated: White Plains, New York
        March 11, 2008

Charles L. Brieant, U.S.D.J.

-6-